**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BUREAU OF CONSUMER FINANCIAL PROTECTION,

*Plaintiff*,

Civil Action No. 20-CV-05159 ALC – BCM

v.

MY LOAN DOCTOR LLC d/b/a LOAN DOCTOR and DR. EDGAR RADJABLI

*Defendants*.

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

# TABLE OF CONTENTS

**Page**


I - PREFACE .......... 1

A. Complaint - .......... 1

B. Motion to Dismiss - .......... 1

II - LEGAL STANDARD .......... 4

III - LACK OF STANDING AND THEREBY LACK OF SUBJECT MATTER OR PERSONAL JURISDICTION .......... 6

A. The CFPB lacks standing and thereby jurisdiction under the *Consumer Financial Protection Act of 2010* to pursue claims regarding Certificates of Deposit / Promissory Notes .......... 6

IV - FAILURE TO PLEAD DAMAGES AND CONCEALMENT OF INFORMATION KNOWN TO THE CFPB .......... 8

V - FAILURE TO ADEQUATELY PLEAD ALLEGED DECEPTIVE ACTS AND PRACTICES .......... 13

A. Defendants failed to adequately plead that Loan Doctor offered consumer financial Products or services - .......... 13

B. The CFPB failed to allege the essential element of unfair or deceptive acts or practices. .......... 15

VI - CONCLUSION AND RELIEF REQUESTED .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*CFPB v. NDG Fin. Corp.*,
15-cv-5211 (CM), 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016)....................16

*CFPB v. RD Legal Funding, LLC*,
332 F. Supp. 3d 729 (S.D.N.Y. 2018), *amended by* 17-CV-890 (LAP), 2018 WL 11219167 (S.D.N.Y. Sept. 12, 2018)....................10

*Chaparro v. Carnival Corp.*,
693 F.3d 1333 (11th Cir. 2012)....................8

*Dammers v. Wells Fargo Bank N.A.*,
17-CV02560 (NSR), 2018 WL 264519 (S.D.N.Y. 01-02-2018)....................7

*Exchange National Bank of Chicago v. Touche Ross & Co.*,
544 F.2d 1125 (2nd Cir. 1976)....................7

*Faber v. Metro. Life Ins. Co.*,
648 F.3d 98 (2d Cir. 2011)....................4

*FTC v. Amy Travel Serv., Inc.*,
875 F.2d 564....................14

*FTC v. Kuykendall*,
371 F.3d 745 (10th Cir. 2004)....................11

*FTC v. Publishers Bus. Servs., Inc.*,
540 F. App'x 555 (9th Cir. 2013)....................9

*FTC v. Verity Int'l, Ltd.*,
443 F.3d 48 (2d Cir. 2006)....................9

*Geler v. National Westminster Bank*,
770 F.Supp. 210 (S.D.N.Y. 1991)....................7

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)....................5

*IBM Poughkeepsie Employees C.U. v. Cumis Insurance Society, Inc.*
590 F.Supp. 769 (S.D.N.Y. 1984)....7

*Matter of Cliffdale Assocs., Inc.*,
103 F.T.C. 110 (1984)....15

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004)....5

*New York Pet Welfare Ass'n, Inc. v. City of New York*,
850 F.3d 79 (2d Cir. 2017)....6

*Nielsen v. Rabin*,
746 F.3d 58 (2d Cir. 2014)....5

*Rahman v. Schriro*,
22 F. Supp. 3d 305 (S.D.N.Y. 2014)....4

*Reves v. Ernst & Young*,
494 U.S. 56 (1990)....7, 8

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)....2, 5, 10

*Seila Law LLC v. Consumer Finance Protection Bureau*,
591 U.S. ___, 140 S.Ct. 2183 (2020)....6

*Singh v. Wells*,
445 F. App'x 373 (2d Cir.2011) ....5

*Sun Co., Inc. v. Badger Design & Constructors, Inc.*,
939 F. Supp. 365 (E.D. Pa. 1996) ....5

*Woods v. Wells Fargo Bank, N.A.*,
733 F.3d 349 (1st Cir. 2013)....14

**STATUTES**

12 U.S.C. § 5481(5), (15)(A)(iv) ....13

12 U.S.C. § 5491(a) ....7

12 U.S.C. § 5491(a), § 5481(14)....7

12 U.S.C. § 5531(c)(1)....15

CFPA....1, 6, 7, 8, 13, 16

*Consumer Financial Protection Act of 2010* ....................1, 6

*Consumer Financial Protection Act of 2010* § 1054 ....................6

*Dodd-Frank Wall Street Reform and Consumer Protection Act*, 124 Stat. 1376 ....................6

FOIA ....................11, 12

Securities Act of 1933 or the Securities Exchange Act of 1934 ....................6

U.C.C. § 3–104(2) (1977) ....................7

**OTHER AUTHORITIES**

Michie, *Banks and Banking* § 313 (1983) ....................7

Federal Rules of Civil Procedure 12(b)(1) ....................1, 5

Federal Rules of Civil Procedure 12(b)(2) ....................1

Federal Rules of Civil Procedure 12(b)(6) ....................1, 4

## I - PREFACE

A. Complaint -

1. The Bureau of Consumer Financial Protection (CFPB) brought this action against Defendants My Loan Doctor LLC d/b/a Loan Doctor and Dr. Edgar Radjabli, a member of the LLC, by filing the *Complaint* (ECF 1) pursuant to its stated authority under the *Consumer Financial Protection Act of 2010* (CFPA). As pled, Loan Doctor maintained a website, now inactive, where it offered certificates of deposit / promissory notes to customers / lenders. The gravamen of the CFPB's *Complaint* is stated as, "to address deceptive acts or practices in connection with [Loan Doctor] offering consumers a 'certificate of deposit' (CD), purportedly to generate capital for Loan Doctor's healthcare-loan-origination business." (ECF 1, ¶ 1). The CFPB's statement of FACTS supporting its allegation, was based on quoted information from the Loan Doctor website (ECF 1, ¶s 11 to 18), and upon information and disclosures in business records voluntarily provided by Loan Doctor via counsel. (Exhibit A, *Declaration of Anthony Alexis*). The *Complaint* fails to aver or allege what those acts or practices were, let alone allege details with the required specificity. And notably, the *Complaint* lacks any claim that any customer / lender ever complained or suffered any harm whatsoever. The Defendants move to dismiss the Complaint with prejudice.[1]

B. Motion to Dismiss -

2. The pleading insufficiencies of the CFPB's *Complaint* are such that now before the Court is *Defendant's Motion to Dismiss the Plaintiff's Complaint* pursuant to FRCivP 12(b)1, 12(b)2 and 12(b)6. As required by this Court's *Practice Rules*, the Defendants submitted a *Request for Pre-*

[1] The Defendants seek the dismissal with prejudice of the CFPB *Complaint* in its entirety, and therefore, do not seek the involuntary joinder of the SEC by this motion.

*Motion Conference* November 12, 2020 ("*Defendants Letter*", EFC 8). The *Defendants' Letter*: listed the fatal shortcomings and pleading lacunae in CFPB's *Complaint*: inadequately pled allegations; and most importantly the CFPB's failure to disclose extensive, specific and verifiable, exculpatory business records in its possession, that the Defendants provided to the CFPB prior to its filing the *Complaint. (See attached Declaration of Anthony Alexis Esq at Para 9.)* Those business records that the CFPB's counsel Benjamin Konop acknowledged receiving and ignoring (see *infra*), conclusively contradict the vague and unsubstantiated pleas for damages in the *Complaint* that he filed and continues to prosecute as Plaintiff's counsel.

3. All the Defendants' customers / investors had been reimbursed in full, prior to the CFPB's filing its *Complaint*. (See, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), stating that the busines records known to and relied upon by the CFPB may be considered in a motion to dismiss).

> "The Defendants can disclose omitted / withheld integral material and contradictory information known to the CFPB at the time of the filing Complaint. The CFPB did not disclose that in an effort to stop further accusations and unsupported claims by the CFPB and the SEC, Loan Doctor refunded every dollar with interest and ceased operations. **On July 2, 2020, Loan Doctor provided, via counsel Anthony Alexis, business records disclosing: each consumer; the amount received and subsequently refunded to each; bank records of refund wire transfers; and password access to the Loan Doctor's accounting records.** No consumer is named as a harmed party or included in damages claimed. It is unknown whether the CFPB or SEC contacted any disclosed consumer whose rights the CFPB is purportedly protecting." ("*Defendants Letter*", EFC 8) (**emphasis** added).

4. The CFPB filed a response to the *Defendants' Letter* on November 17, 2020 ("*CFPB Response*", ECF 9). Replying to issues raised in the *Letter* the CFPB did not request or state an intent to amend its *Complaint*. Notably, it did not deny receiving the exculpatory Loan Doctor business records -tacitly admitting it did by averring that it did not verify the information they contained. (ECF 9). The CFPB takes the position that it had no obligation to verify or substantiate the basis for its unspecified damages claim and made no effort to confirm that Loan Doctor paid

each and every CD customer / investor in full. The CFPB did not disclose that in an effort to stop further accusations and unsupported claims by the CFPB and the SEC[2], Loan Doctor refunded every dollar with interest and ceased operations. These troubling admissions of attempted willful ignorance and the reluctant reckless or intentional misrepresentations to the Court, may be violative of ethical and professional obligations that are not relevant to the resolution of this motion. What is relevant and dispositive is that the CFPB knowingly filed its *Complaint* which alleged facts and requested relief based upon evidence that it knew to be false. The CFPB's continued refusal to acknowledge those facts, proffered as they were by an officer of this court and the former Assistant Director of the Plaintiff agency, and amend its *Complaint* to reflect reality is unconscionable. Forcing the Defendants to bring this motion after being alerted to its bases beforehand, under these (withheld) dispositive facts and circumstances, is unreasonable, unprofessional, and unethical, especially on the part of a party acting under the authority of the Executive Branch of the United Stated Government.

5. The CFPB also took the position that FRCivP 9(b) pleading standards did not apply. The CFPB stated that, in the event that FRCivP 9(b) pleadings standards did apply, the *Complaint* allegations fulfill the FRCivP 9(b) specificity requirements.

6. This Court denied the request for a pre-motion conference and granted the Defendants' request to proceed with a motion to dismiss.

7. As more fully discussed below, the CFPB's *Complaint* allegations lacked plausibility to impose liability or the obligation to pay unsupported damages upon Defendants. First, regarding

[2] The *Defendants Letter* (ECF 8) also pointed out that the SEC was undergoing an investigation of Loan Doctor based upon the same alleged acts and circumstances in a legally and statutorily inconsistent and improper manner. The SEC deposed Dr. Radjabli after the CFPB had filed the *Complaint*, possibly requiring consolidation or coordination of that investigation with this action, for judicial efficiency, due process, and other reasons.

standing and thereby jurisdiction, the CFPB lacks statutory authority to bring or pursue a case regarding certificates of deposit / promissory notes. Second, about the CFPB's allegations of fault and damages, the *Complaint* stated misleading allegations contradicted by indisputable facts known to, ignored and concealed from this Court by the CFPB, and which contradict its allegations. Third, as an action in fraud regarding allegations of deceptive acts and practices related to offering a consumer financial product, CFPB has failed to plead elements with specificity. Fourth, the CFPB failed to allege, and merely concluded, statutorily required essential elements to allege maleficence or impose liability under the proffered statutes pursuant to which the action was brought.

## II - LEGAL STANDARD

8. Deciding whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ((quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

9. When resolving a motion to dismiss under FRCivP 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556). In determining the legal sufficiency of the Complaint, this Court "must accept as true all factual allegations and draw from them all reasonable inferences." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir. 2013)). This Court, however, is not bound by legal conclusions masquerading as factual allegations. See, *Id*. (quoting *Rothstein*, 708 F.3d at 94); see also, *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

10. The District Court may "grant a Rule 12(b)(1) motion when the claim clearly appears to be immaterial and made solely for the basis of obtaining jurisdiction or is wholly unsubstantial and frivolous." *Sun Co., Inc. v. Badger Design & Constructors, Inc*., 939 F. Supp. 365, 368 (E.D. Pa. 1996) (citing *Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1408-1409 (3d Cir. 1991) (citation omitted)).

11. FRCivP 12(b)(1) allows a defendant to bring a motion to dismiss for lack of personal jurisdiction. Once brought by the defendant, the plaintiff, "bears the burden of establishing the court's personal jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

12. "In adjudicating a motion to dismiss, a court may consider only the complaint, written instruments attached to the complaint as exhibits, statements or documents incorporated by reference, and documents on which the complaint heavily relies." *Singh v. Wells*, 445 F. App'x 373, 375 (2d Cir.2011); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), whether disclosed or

omitted in the pleadings and matters subject to judicial notice, *New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

## III - LACK OF STANDING AND THEREBY LACK OF SUBJECT MATTER OR PERSONAL JURISDICTION

### A. The CFPB lacks standing and thereby jurisdiction under the *Consumer Financial Protection Act of 2010* to pursue claims regarding Certificates of Deposit / Promissory Notes

13. The CFPB invokes statutory standing and thereby Article III jurisdiction. The CFPB has the burden of proof and persuasion as to the existence of standing and jurisdiction to bring this action. *Seila Law LLC v. Consumer Finance Protection Bureau*, 591 U.S. ___, 140 S.Ct. 2183 (2020).

14. As an action based upon the offering of Certificates of Deposit / Promissory Notes, which are presumptively securities, the CFPB lacks statutory authority and standing to enforce the Securities Act of 1933 or the Securities Exchange Act of 1934 ("Securities Laws").

15. The CFPB is an independent financial regulator within the Federal Reserve. In implementing the *Dodd-Frank Wall Street Reform and Consumer Protection Act*, 124 Stat. 1376, Congress transferred the administration of 18 existing federal statutes to the newly created CFPB and enacted the *Consumer Financial Protection Act of 2010* ("CFPA"), *Seila, Id.* The Securities Act of 1933 and the Securities Exchange Act of 1934 were not among the federal statutes transferred for administration to the CFPB pursuant to the CFPA.

16. As stated by the CFPB, this action is brought "under §1054 of the Consumer Financial Protection Act of 2010 (CFPA) to address deceptive acts and practices in connection with offering consumers a 'certificate of deposit' (CD), purportedly created to generate capital for Loan Doctor's healthcare-loan-origination business." (ECF 1, ¶ 1). The CFPB alleges standing and thereby

subject matter and personal jurisdiction pursuant to 12 U.S.C. §5491(a), §5481(14) and "independent litigating authority" to enforce the CFPA pursuant to §5564(a), (b). (ECF 1, ¶ 5).

17. The CFPB's *Complaint* alleged that Loan Doctor offered of a "consumer financial product or service under 'Federal Consumer Financial Laws' 12 U.S.C. § 5491(a)" (ECF -1 ¶ 5, 8). The CFPB solely relies upon the allegation that Loan Doctor acting with Dr. Radjabli offered consumers a "Healthcare Financer (HCF) Savings CD Account" or "HCF High Yield CD Account." (ECF 1, ¶ 12). The CFPB's allegations stated in ECF 1, ¶'s 13, 14, 15, 16, 17, 18, 19, 24, 27, 35, 37, 42, 43, 44, 45, 46, 47, 52, 53, 55, 58, 62, 67, 70, 73 and 76 all reiterate the basis of the allegations of wrongdoing is the offering of CD's.

18. Numerous cases have held that CD's are promissory notes. "A certificate of deposit is, in effect, a promissory note." *Geler v. National Westminster Bank*, 770 F.Supp. 210, 214 (S.D.N.Y. 1991); *Dammers v. Wells Fargo Bank N.A.*, 17-CV02560 (NSR), 2018 WL 264519 (S.D.N.Y. 01-02-2018); *IBM Poughkeepsie Employees C.U. v. Cumis Insurance Society, Inc*. 590 F.Supp. 769, 775 (S.D.N.Y. 1984); 5B Michie, *Banks and Banking* § 313 (1983) and cases cited therein; *see also* U.C.C. § 3–104(2) (1977).

19. Generally, promissory notes are considered "Securities", (See, *Reves v. Ernst & Young*, 494 U.S. 56 (1990)), to be regulated by the Securities and Exchange Commission (SEC). The *Reves* court adopted a *family resemblance factor test* to be applied to distinguish promissory notes issued and purchased for investment purposes which are securities, from promissory notes issued and purchased for some other purpose which are not. *Reves* @ 67, 68; *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1125, 1138 (2nd Cir. 1976). The CFPB acknowledged *Reves* factor one and stated that Loan Doctor CD's were offered and known to be purchased by

customers / lenders for profit, offering and realizing an interest yield of as much as "6% APY" (ECF – 1, ¶ 12).

20. The CFPB allegations of jurisdiction and statements in support of liability are unsupported conclusions of law, not entitled to the presumption of truth or any deference. *Iqbal* @ 556 U.S. @ 663. "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). The CFPB stated and brought this action based upon its presumptions and conclusion that the issuance of Loan Doctor CD's is subject to the CFPA and thereby CFPB statutorily authorized enforcement. CFPB relied upon its stated conclusions of law without reference to or any alleged factual analysis of the *Reves family resemblance factor test* to support its conclusion that the CD's / Promissory Notes were not securities and therefore subject to the CFPA or CFPB standing to bring an action based upon the CFPA.

21. Absent factually supported evidentiary allegations by the CFPB of the application of the *family resemblance factor test* to the question of "security" or "not security" to sustain standing by the CFPB, the CFPB cannot meet its burden of proof or persuasion and jurisdiction cannot be imposed based upon CFPB's conclusions of law.

## IV - FAILURE TO PLEAD DAMAGES AND CONCEALMENT OF INFORMATION KNOWN TO THE CFPB

22. Under the CFPA, the CFPB is an investigative and enforcement agency. It is apparent that, under its investigative authority, prior to initiating an action, the CFPB has the statutorily granted means and, as any plaintiff, is required to establish, present and certify the reasonable evidentiary basis for its claims against the Defendants. FRCivP 11(b). Here, after presumably conducting said required pre-action investigation, the CFPB failed to allege facts to support its plea for damages or that any provable documented damages in fact exit. Any monetary relief stemming from a

violation of a consumer financial law must be causally linked to *consumer injury*. *See, e.g.*, *FTC v. Publishers Bus. Servs., Inc.*, 540 F. App'x 555, 558 (9th Cir. 2013). The consumer injury analysis is required because equitable relief must be tied to *unjust* gains. See*, FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 69 (2d Cir. 2006) (noting that "[r]estitution is based on *unjust* payments, not just *overall* payments . . .") (emphasis added) and is a fact-specific analysis.

23. The *Complaint* presumes and concludes that damages exist. Absent is any allegation whatsoever of the actual existence or degree of damages, an essential element, which was not alleged beyond vague speculation and unsupported conclusions. The CFPB's prayer for relief and damages includes enjoining from future violations; unspecified damages or other monetary relief; unspecified redress to consumers; disgorgement of unspecified funds; and unspecified civil penalties. (ECF 1, *Demand for Relief*). Lacking allegations of actual damages, and without supporting factual recitation or allegation let alone an iota of evidentiary support, the *Complaint* relied repeatedly upon CFPB's presumptions and the conjectural term "*likely*". (ECF 1 - ¶'s 50, 54, 55, 61, 62, 69, 70, 75, 76). The referenced statutes, draft by the CFPB, do include the term "likely". The reference to "likely" as the sole support for a cause of action does not supersede the essential basic breach, causation and damages pleading requirements or absolve the CFPB from having to plead facts from which it seeks to buttress the "likely" evidentiary conclusion beyond speculation. Under the *Twomby- Iqbal* standards a pleading cannot be structured purely out of conjecture and conclusions presented as facts. The *Complaint* fails by omission the test because it does not present any factual basis for who, what, how, why, or by its own standard "if" anyone was "likely," deceived or harmed.

24. First, the CFPB did not allege that any consumer had been deceived or mislead by statements on the Loan Doctor website or acts of Loan Doctor. The CFPB thus tacitly admits its

inability to allege a single incident or accusation of damage to any Loan Doctor customer / lender. In so doing, the CFPB relies upon *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 772–73 (S.D.N.Y. 2018), *amended by* 17-CV-890 (LAP), 2018 WL 11219167 (S.D.N.Y. Sept. 12, 2018), *vacated on other grounds and remanded by* — F. Appx. —, 2020 WL 6372988 (Mem.) (2d. Cir. Oct. 30, 2020) for the proposition that alleging "*likely"* without further allegations or proof of damages is sufficient to be awarded nonexistent damages. As to the "consumers acting reasonably" standard, the CFPB failed to allege facts supporting that conclusion. Per *RD Legal*, in addition to alleging representations to consumers, the CFPB must allege that said representations would likely mislead consumers acting reasonably. *Id.* The Court went on to conclude, "that such representations 'without appropriate disclosures could deceive reasonable customers.'" *Rd Legal* @ 775. The *Complaint* at issue in this case does not allege anything that could be construed to remotely satisfy this need. It fails to put forth any facts from which it purports to support its conclusion that it is "likely" that any reasonable Loan Doctor customer / lender was deceived.

25. CFPB in relying on one portion of *RD Legal* ignored disclosures Loan Doctor provided on its website.[3] Among other disclosures on the website, Loan Doctor required that each customer / lender, prior to purchasing a CD, to acknowledge and agree to the contractual terms of the *HCF High Yield CD Account Agreement* (Exhibit B). The Agreement by and between Loan Doctor and each customer /lender disclosed how CD funds would be held or invested to realize profit, stating,

> "INSURANCE The funds on deposit in the account may be placed in global comingled accounts that are FDIC insured, SIPC insured, or otherwise insured at a regulated US based financial institution, including banks, brokerages, or investment funds. The insurance is issued, directly or indirectly, for the benefit of the CD account holders, and CD accounts holders are first position lienholders on proceeds from any insurance claim. Each individual account is not itself FDIC insured."

---

[3] The Loan Doctor website and content therein were known to CFPB and evident from quotes in the *Complaint* relied upon the CFPB. See, *Roth* @ 509

26. Second, the CFPB willfully concealed, and the *Complaint* ignores and misrepresents material omissions of pivotal information known to the CFPB which contradicts the basis for the imposition and degree of damages. This information includes the evidence Defendants via counsel, Anthony Alexis, provided to the CFPB months before it filed the *Complaint* in the form of verifiable business records (See Alexis Decl. Para. 9). The Defendants had re-paid all held CDs / Promissory Notes in full including all accumulated interest, then ceased business. (Exhibit A, *Declaration of Anthony Alexis*). To the contrary, the CFPB admitted having failed and refused to even attempt to contact any Loan Doctor CD customer / lender to verify payment or to assess any perception of deception or dissatisfaction or opinion of satisfaction. See, *FTC v. Kuykendall*, 371 F.3d 745, 766 (10th Cir. 2004) which held that, "Refunds to consumers and consumer satisfaction are to be considered as to whether damages, if any, exist." The *Kuykendall* court stated, "**the defendants might be able to show that some customers received full refunds of their payments or that others were wholly satisfied with their purchases and thus suffered no damages.**" *Id*. (**emphasis** added).

27. Third, the CFPB concealed or ignored that the Consumer Complaints website database maintained by the CFPB (Consumerfinance.gov/data-research/consumer-complaints/) did not list any report of any consumer complaint against Loan Doctor or Dr. Radjabli, among its almost two million registered complaints. (Exhibit C, *Declaration of Michael Strage Regarding Search of CFPB Reported Complaints Databased.*

28. Fourth, in responses to a FOIA request, the CFPB admitted that,

> the Bureau responded to parts 4 and 5 of your Request collectively. **You argue that the Bureau should have responded to part 4, which seeks any complaints made regarding a company called Loan Doctor,** separately rather than combine it with part 5, which seeks a variety of other complaints and records. You assert that the Bureau's collective treatment of parts 4 and 5 resulted in a lack of clarity as to

> whether the Bureau is withholding any records responsive to part 4. **Finally, you assert that the Bureau should state whether it is withholding any records responsive to part 4 and, if so, provide an enumerated list of the records withheld**…
> … The Bureau's response to your Request is unclear as to whether any records responsive to part 4 are being withheld. To the extent more clarity is required, it can be provided without remanding the Request for further processing as the information requested can be readily ascertained: **The Bureau's search yielded no records responsive to part 4 of your Request and thus no records responsive to part 4 have been withheld**.

Exhibit D, Nov 24, 2020 [CFPB] *Final Appellate Determination Denying FOIA Appeal No. 2020-0271*).

29. Fifth, the CFPB did not fulfill the initial burden of alleging sufficient facts to "reasonably approximate" equitable monetary damages that would go back to consumers. ECF 1, ¶ 16 states, *"Starting in August 2019, Loan Doctor took more than $15 million from at least 400 consumers…"*. As discussed above, the number of customers /lenders, amount received, and refunds were known to the CFPB from business records provided by the Defendants to the CFPB prior to filing, which the CFPB, an investigative agency acknowledged receiving but chose not to so much as attempt to verify. (Alexis Decl. para 9-11)

30. Further, the *Complaint* misrepresents the facts with its use of the inapplicably accusatory word: *took* that includes a conclusory claim lacking, and in fact contradicting the actual factual context. In so doing, it merely implies rather than factually alleges wrongful acts, as a proper pleading must. Notably, the CFPB does not name a single harmed or dissatisfied customer / lender of the "at least 400 consumers" alleged in the *Complaint*. (ECF 1, ¶ 16). Equally, CFPB's *Demand and Relief* seeks, damages the CFPB knew did not exist, i.e., "pay redress to consumers" and "disgorgement of Defendants' ill-gotten gains." The CFPB concealed facts and implied that the alleged $15 million Defendants allegedly *took*: was in the possession of the Defendants; redress was owed customers / lenders; and funds had to be disgorged. Contrary to the CFPB's pleading,

the CFPB knew there were no Loan Doctor profits or other funds owed to customers / lenders or held to disgorge (Alexis Decl. para 9).

31. The illusory "likely" damage allegations, such as they are, are demonstrably false. The knowingly false allegations and the CFPB's willful ignorance and subsequent wanton and repeated attempts to hopefully shield itself by ignoring exculpatory evidence of the Defendants' actions in changing its website disclosures and fully reimbursing all of its customers / lenders constitute a fatal flaw in the CFPB's *Complaint* and a fraud on this Court. The CFPB misrepresented reality when it requested relief and damages that it knew to be unsubstantiated and impossible to establish given the lack of supporting evidence and the contradictory evidence it had in its possession. Contrary to the prayer for relief in its pleading, the CFPB had proof when it filed the *Complaint* that there were no Loan Doctor consumer complaints, profits or consumer funds owed or to disgorge.

## V - FAILURE TO ADEQUATELY PLEAD ALLEGED DECEPTIVE ACTS AND PRACTICES

### A. Defendants failed to adequately plead that Loan Doctor offered consumer financial Products or services -

32. The CFPB alleged that it has authority to regulate the Defendants business activities because the Defendants were engaged in, "the offering and provision of consumer financial products or services." (ECF 1, ¶'s 5, 8). The CFPB alleged that, the CFPA defines "consumer financial product or service" to include "engaging in deposit-taking activities . . . or otherwise acting as a custodian of funds . . . for use by or on behalf of a consumer" for personal, family, or household purposes. 12 U.S.C. § 5481(5), (15)(A)(iv). (ECF 1, ¶ 8).

33. The *Complaint* allegations of "covered person", "related person" (ECF 1, ¶'s 8, 9, 10) and *Violations of Law* (ECF 1, ¶'s 49 – 77) are all dependent upon the conclusion that the Defendants

were engaged in, "the offering and provision of consumer financial products or services." Absent well-pled allegations to support that threshold, the cascade of potential liability fails.

34. "What constitutes an unfair or deceptive practice requires an individualized, 'fact-specific' inquiry." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013). The First Circuit affirmed an order granting a motion to dismiss because the Complaint's "failure to set forth any particular acts or practices marked by 'an extortionate quality ... of unfairness [and deceptiveness],'" was insufficient to state a claim. *Id.* See*, FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989 (citing *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1291–92 (D. Minn. 1985) where the Court held that, "the FTC first must prove the corporate practices at issue were misrepresentations or omissions generally relied upon by reasonably prudent persons and that consumer injury resulted.

35. As alleged in the *Complaint* and detailed *supra* in the section regarding the *Lack of Standing and thereby Jurisdiction,* the Defendants offered CD's / Promissory Notes to customers / lenders. The customers / lenders invested in Loan Doctor's disclosed venture (ECF 1, ¶ 11, 12, 13, 14), which was memorialized by short term, interest bearing CD's / Promissory Notes. Via a legal conclusion interpreting the inclusion within an unrelated statutory definition, the CFPB sought to categorize a CD / Promissory Note as a "deposit" without any alleged the basis for that categorization. (ECF 1 ¶ 14). Contrary to the CFPB's presumption and legal conclusion that the alleged Defendant activities were "financial products or services", the CFPB must, but has failed to, state well-pled allegations that offering a CD / Promissory Note is somehow within its presumed statutory definitions and assumed authority. The CFPB concluded but did not allege an applicable statutory definition or citation to case law wherein an investment for profit memorialized by a CD / Promissory Note was taking a "deposit" or "acting as a custodian of funds"

or in any manner involving consumer funds "for use by or on behalf of a consumer" for personal, family, or household purposes. As alleged, the customer / investor funds were invested in Loan Doctor for Loan Doctor's disclosed venture for profit, not held as "deposits". Once invested the funds were that of Loan Doctor subject to re-payment under the CD / Promissory Notes terms.

B. The CFPB failed to allege the essential element of unfair or deceptive acts or practices.

36. To bring an action based upon an unfair act or practice, the CFPB must at the onset, state well-pled allegations showing that "[1] the act or practice causes or is likely to cause substantial injury to consumers [2] which is not reasonably avoidable by consumers; and [3] such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1)). Further, there needs to be evidence in the record as to what a reasonable consumer would likely conclude. *Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984).

37. The required elements of 12 U.S.C § 5531(c)(1) were not pled. [1] In the absence of damages, the *Complaint* heavily relies upon "likely" of the first requirement with no allegations to substantiate the likelihood. [2] The *Complaint* did not allege that the Defendants' solicitation of investment funds memorialized by CD's /Promissory Notes could not be "reasonably avoidable by consumers." Investment was not a necessity or pressure sale. The readily avoided internet solicitation coupled the minimum of $1,000 would cause potential customers / investors to stop, consider and perhaps not buy in. [3] Absent were allegations that, "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." In fact, there were no injuries and each and every customer / investor received the full *benefit of the bargain*. Lastly, there was no allegation as to what a reasonable consumer would likely conclude from the act or practice.

38. Additionally, to make a prima facie case of deceptive acts or practices under the CFPA, the Complaint must allege adequately "(1) a representation, omission or practice that, (2) is likely to mislead consumers acting reasonably under the circumstances, and (3), [that] the representation, omission, or practice is material." *CFPB v. NDG Fin. Corp*., 15-cv-5211 (CM), 2016 WL 7188792, at *14 (S.D.N.Y. Dec. 2, 2016) (quoting *FTC v. Med. Billers Network, Inc*., 543 F. Supp. 2d 283, 303 (S.D.N.Y. 2008)) (alteration in original). The Complaint does not satisfy any of these requirements as it lacks any recitation whatsoever of supporting factual allegations of a single material misleading representation. Reciting or paraphrasing a statute does not a viable complaint make. To survive dismissal, it must at least make factual allegations (to which the Court should give the benefit of the doubt) in support of the statutory language of its claims and prayers. Here there are none.

39. The CFPB concluded and declared that consumers acting reasonably would "likely be misled. There are no allegations of consumer conduct or consequences. Regarding allegations of materiality, The CFPB stated the element, then pled circular logic in lieu of any actual allegations of fact. "[A] practice is deceptive if (1) there is a representation or omission of information that is likely to mislead consumers acting reasonably under the circumstances and (2) that information is material to consumers." (ECF 1, ¶ 50). "And "Defendants' misrepresentations were material because they were likely to affect the conduct or decisions of consumers regarding whether to deposit money into the HCF High Yield CD Accounts." (ECF 1, ¶ 55). What were they? And how were they likely to do so? The *Complaint* is silent.

## VI - CONCLUSION AND RELIEF REQUESTED

40. As is evident in the CFPB's pro-offered pleading and amply detailed above, the CFPB's *Complaint* predominantly consists of presumptions and conclusions where well-pled allegations of fact for consideration by this Court are required. Remarkably, the CFPB has chosen to rely upon the *Complaint* (ECF 1) as filed and does not seek to amend and correct. Therefore, the CFPB's *Complaint* should be dismissed with prejudice.

This 16th day of December 2020.

Submitted by:

/s/ Michael Strage
Michael Strage
Law Office of Michael Strage
425 Madison Ave, Suite 902
New York N.Y. 10017
(646) 642-0701
michaelstrageesq@gmail.com
Attorney for Defendants