**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>Plaintiff,<br><br>v.<br><br>My Loan Doctor LLC d/b/a Loan Doctor and Edgar Radjabli,<br><br>Defendants. | **CASE NO. 1:20-CV-5159-ALC** |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

In their motion to dismiss, Defendants argue that the Complaint fails to sufficiently state claims for relief and that the Court lacks subject-matter jurisdiction. More outrageously, Defendants argue that the Bureau's attorneys may have violated their "ethical and professional obligations"[1] by failing to inform the Court of Defendants' claims that they have stopped their unlawful conduct and refunded money to consumers. None of these arguments justifies dismissal of the Complaint.

The Complaint asserts, with specificity, three claims that Defendants deceptively offered to consumers a deposit product—conduct that, if true, would violate the Consumer Financial Protection Act of 2010 (CFPA). The Court unquestionably has subject-matter jurisdiction over these claims; the CFPA itself says that the Court "shall have jurisdiction" over an action brought under the CFPA. Finally, the Bureau had no obligation to include in its Complaint Defendants' claims (which the Bureau does not

[1] Defs.' Mem. Supp. Mot. Dismiss 3 at ¶ 4, ECF No. 12.

credit) that they stopped their unlawful conduct and refunded all consumers' wrongfully taken money. In any event, as Defendants themselves concede, their claims are impertinent to whether the Complaint should survive the motion to dismiss.[2] For the more relevant reasons below, the Court should deny the motion and allow this case to proceed on its merits.

## Factual Background

Radjabli concocted a scheme to offer consumers through his company, Loan Doctor, a financial product that was in name one thing—a "certificate of deposit" with a 6% rate of return purportedly backed by both cash reserves and insurance and "comparable to a traditional bank savings account"[3]—but in practice another. In practice, Loan Doctor gambled with consumers' money in the stock market, investing most of the money that consumers deposited with Loan Doctor (around $15 million) in Radjabli's own hedge fund, where it was used to directly purchase securities, or with a third-party broker-dealer, where it was further loaned to borrowers who put up their own stock portfolios as collateral.[4] All the while, Defendants represented to consumers that their deposits would either be (1) used to temporarily fund loans to doctors for career-related expenses, or (2) kept safe in FDIC-backed accounts or cash equivalents.[5] Defendants ran this scheme for nearly six months before Loan Doctor removed its purported certificate of deposit from its website in response to the Bureau's request.[6]

---

[2] *Id.* (admitting that Defendants' scurrilous claims "are not relevant to the resolution of this motion").
[3] Compl. ¶ 37, ECF No. 1.
[4] Compl. ¶ 33.
[5] Compl. ¶¶ 18–20, 32.
[6] Compl. ¶¶ 44–45.

Now, in their motion to dismiss, Defendants argue that all consumers' deposits have been repaid; that, as a result, the Bureau's claims fail because there has been no consumer harm from the alleged deception; and that the Bureau has committed "fraud on this Court" by bringing this action after Defendants told the Bureau that they had repaid all of the money that they had taken from consumers. Defendants further argue that the Bureau did not adequately plead damages or identify harmed consumers; that the Bureau's claims fail because they were not pleaded with the specificity required under Federal Rule of Civil Procedure 9(b); and that the Court lacks subject-matter jurisdiction over the claims.

The Court should reject these arguments and deny Defendants' motion.

## Argument

### I. The Complaint adequately alleges that Defendants engaged in deceptive acts or practices.

As Defendants correctly state in their motion, the Court's role at this stage is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."[7] In doing so, the Court must "accept as true all factual allegations" in the Complaint "and draw from them all reasonable inferences."[8]

Defendants argue that they have already fully compensated consumers for the harm that they suffered as a result of Defendants' violations. But such an assertion—a question of fact with no basis in the Complaint—is not properly considered on a motion to dismiss under Rule 12(b)(6). Even if it were true that Defendants had stopped their unlawful conduct and returned to consumers all deposited money, the return of

[7] *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).
[8] *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

consumers' deposits does not negate the material misrepresentations made to consumers before the deposits were made. The Bureau would still be entitled to relief, including damages that consumers may have suffered as a result of the loss of their funds, an injunction designed to prevent Defendants from violating the law again, and civil money penalties imposed against Defendants.[9] The need for this and other relief would not be obviated even if, as Defendants claim, they already returned money to harmed consumers and stopped committing new violations.

The Bureau's Complaint alleges one type of claim—deception under the CFPA. Injury is not an element of such a claim. A prima facie deception claim under the CFPA requires only: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and that (3) the representation, omission, or practice is material.[10] A representation is likely to mislead consumers acting reasonably under the circumstances when that representation is false.[11] "Express representations that are shown to be false are presumed material."[12]

A Rule 12(b)(6) motion is meant to test a claim's legal sufficiency, and the demand for relief required by Rule 8(a)(3) "is not itself a part of the plaintiff's claim."[13] Also, "it need not appear that the plaintiff can obtain the *specific* relief demanded as

---

[9] *See* 12 U.S.C. § 5565(a)(2)(E), (G), (H).
[10] *CFPB et al. v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 772–73 (S.D.N.Y. 2018), *amended by* 17-CV-890 (LAP), 2018 WL 11219167 (S.D.N.Y. Sept. 12, 2018), *vacated on other grounds and remanded by* — F. Appx. —, 2020 WL 6372988 (Mem.) (2d. Cir. Oct. 20, 2020) (internal quotations omitted).
[11] *See id.* at 773.
[12] *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008); *see also RD Legal Funding*, 332 F. Supp. 3d at 773.
[13] *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc.*, 806 F. Supp. 2d 503, 507–08 (D.P.R. 2011).

long as the court can ascertain from the face of the complaint that *some* relief can be granted."[14] Courts therefore do not dismiss a complaint for failure to state a claim where the challenge relates to the relief sought.[15]

If the Bureau prevails on its claims against Defendants, it is entitled to relief, regardless of the degree to which consumers have been injured. Under the CFPA, "[i]f any person violates a Federal consumer financial law, the Bureau may . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law."[16] Consumer injury, or lack thereof, may be a mitigating factor in determining the size of the penalty under the CFPA,[17] but consumer harm is not necessary to state a claim here or for a penalty—even without it, a penalty is to be imposed for deceptive acts or practices.[18]

Defendants also argue that there are insufficient factual allegations to show that a consumer would "likely" be misled by Defendants' representations and that the deceptive representations were material. Contrary to Defendants' contentions, the Complaint lists Defendants' deceptive statements in great detail. It offers numerous specific false statements that Defendants made, including falsely representing that the

---

[14] *Doe v. U.S. Dep't. of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985).
[15] *See id.*; *see also CFPB v. Citizens Bank, N.A.*, C.A. No. 20-044 WES, 2020 WL 7042251, at *16 (D.R.I. Dec. 1, 2020) ("Citizens states that the CFPB is 'well aware that they seek monetary remedies for customers who already received payments from the Bank. . . .' Again, this contention involves factual issues that must be resolved at summary judgment or trial. There is no cause to strike material from the Complaint at this time.").
[16] 12 U.S.C. § 5564(a).
[17] 12 U.S.C. § 5565(c)(3)(C) (providing that, in determining penalties, courts should consider "the severity of the risks to or the losses of the consumer").
[18] 12 U.S.C. § 5565(c)(2).

money deposited in the consumers' CD accounts would be used to originate loans for healthcare professionals;[19] falsely representing that to the extent the deposited money was not being used to originate loans, it would be held in either an insured account or a "cash alternative" or "cash equivalent";[20] falsely touting the stability of money deposited in consumers' accounts by likening those accounts to traditional bank-savings accounts;[21] and falsely representing past returns on the CDs that Defendants offered.[22] And the Complaint alleges that Defendants' deceptive representations were material and likely to affect consumers' decisions regarding whether to deposit money with Loan Doctor.[23]

Defendants again raise a potential factual dispute in an effort to support their motion to dismiss, attaching as an exhibit an account agreement and arguing that it includes a disclosure that would correct any consumer misunderstandings such that the misrepresentations in the Complaint were not "likely to mislead" consumers.[24] Defendants cite no authority to support the Court's consideration of this or the other evidence that they seek to introduce outside the Complaint, and it should be excluded.

Both new factual allegations and evidence to support them are "matters outside the pleadings" and are not appropriate for consideration in evaluating a Rule 12(b)(6) motion.[25] Only in specific, limited circumstances may documents outside the Complaint

[19] Compl. ¶¶ 18.a., 19–30.
[20] Compl. ¶¶ 18.b., 31–36.
[21] Compl. ¶¶ 18.c., 37–41.
[22] Compl. ¶¶ 18.d., 42–43.
[23] Compl. ¶¶ 55, 62, 70, 76.
[24] Defs.' Mem. 9–10 at ¶¶ 24–25; Ex. 3, ECF No. 12-3 (Account Agreement).
[25] *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that

be considered—"'documents attached as an exhibit thereto or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken.'"[26] Importantly, "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion."[27] Here, the Complaint does not incorporate, refer to, or rely on any of the extraneous evidence that Defendants attach to their motion, and there is thus no basis for the Court to consider it.[28] The Complaint alleges numerous false statements on Loan Doctor's website and in other marketing materials. Taken as true, the Bureau's allegations "plausibly give rise to an entitlement to relief."[29] Rule 12(b)(6) is satisfied, as the Complaint adequately alleges deception claims.

## II. CFPA deception claims do not sound in fraud, and Rule 9(b)'s heightened pleading requirements do not apply.

Defendants argue that this case is an "action in fraud" such that Rule 9(b)'s heightened pleading requirement governs. It does not. This action consists solely of deception claims under the CFPA, and courts, including this one, have repeatedly held

---

the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'").

[26] *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 374 (S.D.N.Y. 2013) (Carter, J.) (quoting *Thomas v. Westchester Cnty. Health Care Corp.,* 232 F. Supp. 2d 273, 275–76 (S.D.N.Y. 2002)).

[27] *Chambers*, 282 F.3d at 153; *see also Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (finding that the district court erred in considering documents where they "were not attached as exhibits to the amended complaint nor were they incorporated by reference," but were "merely discussed" in the complaint).

[28] *Tommy Lee Handbags Mfg*., 971 F. Supp. 2d at 374 (quoting *Thomas v. Westchester Cnty. Health Care Corp.,* 232 F. Supp. 2d at 275–76) ("To incorporate a document by reference, 'the Complaint must make a clear, definite and substantial reference to the document[].'").

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

that Rule 9(b) does not apply to consumer-protection deception claims. As Judge Preska recently observed in another case involving the Bureau: "The Court has identified no case in which this Court or the Court of Appeals has applied Rule 9(b)'s heightened pleading standard to claims of deceptive or abusive acts or practices under the CFPA."[30]

Even if Rule 9(b) applied, the Complaint describes Defendants' activities in such detail that it would pass Rule 9(b) muster. Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."[31] The Complaint lists numerous word-for-word false statements that Defendants made regarding what they would do with consumers' money;[32] it identifies where the statements were made (on Loan Doctor's website, and in targeted advertisements, press releases, and emails to registered investment advisors);[33] and it explains in great detail what Defendants actually did with consumers' money that differed from what they represented to consumers.[34] The Complaint makes Defendants well aware of what they did and would satisfy Rule 9(b) if it applied to these ordinary deception claims (which it does not).

---

[30] *RD Legal Funding*, 332 F. Supp. 3d at 768; *see also FTC v. Freecom Comms., Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005) (explaining that a deception claim under the FTC Act is "simply not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)," and that "[u]nlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation").

[31] *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).

[32] Compl. ¶¶ 18–43.

[33] Compl. ¶¶ 15, 17, 20, 22–26, 31–32, 39, 42.

[34] Compl. ¶¶ 18–43.

## III. The Court has subject-matter jurisdiction.

Under a heading of "lack of standing and thereby lack of subject matter or personal jurisdiction," Defendants seek dismissal under Rule 12(b)(1). While Defendants' heading refers to standing and personal jurisdiction, their argument relates to only subject-matter jurisdiction. But there can be no question that the Court has subject-matter jurisdiction under the CFPA, which provides that the court "shall have jurisdiction" in any action "brought under Federal consumer financial law."[35] This action is "brought under Federal consumer financial law" because it asserts violations of the CFPA, which is included within the statutory definition of "Federal consumer financial law."[36] And the CFPA also provides the Bureau's authority to bring the action.[37]

Defendants assert that they are not "covered persons" under the CFPA because the product that they offered to consumers should be presumed to be a security, not a "consumer financial product of service" over which the Bureau would have authority. Defendants argue that claims involving their product would be properly brought under the Securities Act of 1933 or the Securities Exchange Act of 1934, neither of which the Bureau has authority to enforce.[38]

But the Bureau needn't allege violations of securities laws to reach Defendants' unlawful conduct. The CFPA makes it unlawful for a "covered person" to engage in a deceptive act or practice.[39] And the statute defines "covered person" to include "any person that engages in *offering* . . . a consumer financial product or service."[40] Finally,

---

[35] 12 U.S.C. § 5565(a)(1).
[36] 12 U.S.C. § 5481(14).
[37] 12 U.S.C. § 5564(a).
[38] Defs.' Mem. 6 at ¶¶ 13–15.
[39] 12 U.S.C. § 5536(a)(1)(B).
[40] 12 U.S.C. § 5481(6) (emphasis added).

the statute defines "consumer financial product or service" to include "deposit-taking activities . . . or otherwise acting as a custodian of funds . . . for use by or on behalf of a consumer" for personal, family, or household purposes.[41] As the Complaint alleges, Loan Doctor offers to accept deposits from consumers and to act as a custodian of those funds for use by consumers for personal, family, or household purposes.[42] Because Defendants offer to engage in deposit-taking activities, they fall within the CFPA's scope, the Bureau's authority, and this Court's jurisdiction.

Where, as here, a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) is based solely on the allegations in the Complaint, a plaintiff bears "no evidentiary burden."[43] The Court "must accept the complaint's allegations as true;" "'draw[ ] all reasonable inferences in favor of the plaintiff'"; and determine whether the Complaint alleges facts that establish subject-matter jurisdiction.[44]

Loan Doctor does not dispute the Bureau's allegations, but it argues that, as a matter of law, any product described as a "CD" is necessarily a "security" and that the Court therefore lacks jurisdiction under the CFPA. For the purpose of the Bureau's CFPA deception claims, the legal test for what qualifies as a "security" is immaterial. What is material to the Bureau's claims, and to the Court's determination of subject-matter jurisdiction, are the alleged facts that Loan Doctor accepted deposits from consumers and acted as a custodian of consumers' funds, that Loan Doctor represented to consumers that it offered a secure deposit product, and that Loan Doctor made

---

[41] 12 U.S.C. § 5481(5), (15)(A)(iv).
[42] Compl. ¶ 8.
[43] *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016)).
[44] *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

material misrepresentations to consumers about its product. These allegations, which must be presumed true for purposes of evaluating both a Rule 12(b)(1) and a Rule 12(b)(6) motion, establish the Court's subject-matter jurisdiction. Simply put, the Bureau has alleged claims under the CFPA, the Bureau has authority to bring those claims, and the Court has subject-matter jurisdiction over them.

## IV. The Bureau has not knowingly made false allegations to or concealed exculpatory evidence from the Court.

Defendants accuse the Bureau of knowingly committing fraud on the Court by failing to disclose in the Complaint that Loan Doctor claims to have ceased operating and to have returned consumers' money. But the Bureau has no obligation to inform the Court of every unproven (or false) assertion that Defendants made during the Bureau's investigation. And, contrary to Defendants' assertions, the Bureau specifically alleged in the Complaint that "Loan Doctor did not cease operating."[45] Indeed, the Complaint details Defendants' extensive efforts "to continue to sell Loan Doctor's High Yield CD product under a different name while still concealing its risks to consumers"—even after the Bureau had requested them to stop.[46] Defendants' allegations of unethical conduct are thus groundless.

## V. The Court should decline to consider matters outside the Complaint.

The Court should decline to consider two declarations submitted by Defendants' attorneys, Anthony M. Alexis and Michael Strage, in support of their motion.[47]

---

45 Compl. ¶ 45.
46 Compl. ¶¶ 45–48.
47 Defs.' Mem., Ex. 1, ECF No. 12-1 (Alexis Decl.); Ex. 4, ECF No. 12-4 (Strage Decl.).

Most fundamentally, the Court should decline to consider the declarations both because they are extraneous to the Complaint and because they contain nothing that is relevant to the questions presented by the motion to dismiss: whether the Complaint is sufficient and whether the Court has subject-matter jurisdiction. But even if the Court were otherwise inclined to consider the declarations, there are additional reasons not to do so.

First, both declarations run afoul of Rule 8.4 of the local ECF Rules & Instructions, which requires that the filed declarations include scans of the declarants' actual signatures. Strage's and Alexis's declarations contain only electronic signatures, not scans of their actual signatures.

Second, Alexis's declaration doesn't satisfy 28 U.S.C. § 1746 because it doesn't state that it is "true and correct." In this Circuit, courts should reject declarations that do not claim under penalty of perjury to be "true and correct."[48] While Alexis's declaration is made under penalty of perjury, nowhere does Alexis claim that what he declares is "true and correct." Alexis has thus failed to satisfy the requirements of 28 U.S.C. § 1746.

Accordingly, the Court should decline to rely on the declarations submitted by Defendants' attorneys.

---

[48] *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 722 F. 3d 483, 488 (2d Cir. 2013) (holding that 28 U.S.C. § 1746 requires that declarations be made under penalty of perjury and assert that the stated matter is "true and correct").

## Conclusion

The Bureau has adequately alleged claims for deceptive acts or practices under the CFPA, and this Court has subject-matter jurisdiction over the alleged claims. The Court should deny Defendants' motion to dismiss.

Respectfully submitted,

THOMAS G. WARD
Enforcement Director
JEFFREY PAUL EHRLICH
Deputy Enforcement Director
KARA K. MILLER
Assistant Litigation Deputy

s/ Benjamin Konop
BENJAMIN KONOP (OH No. 0073458)
Senior Litigation Counsel
Telephone: 202-435-7265
e-mail: Benjamin.Konop@cfpb.gov
STEPHANIE DUFF-O'BRYAN
(NY No. 5026224; TX No. 24087448)
Enforcement Attorney
Telephone: 202-288-7033
e-mail: Stephanie.Duff-OBryan@cfpb.gov

Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552