**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BUREAU OF CONSUMER FINANCIAL PROTECTION,

*Plaintiff,*

Civil Action No. 20-CV-05159 ALC – BCM

v.

MY LOAN DOCTOR LLC d/b/a LOAN DOCTOR and DR. EDGAR RADJABLI

*Defendants.*

---

**DEFENDANTS' REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

1. The *Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Complaint* (ECF 12, "*Memo MTD*") presented dispositive flaws in the Plaintiff, Bureau of Consumer Financial Protection's ("*CFPB*", "*Bureau*"), demonstrably inadequate *Boilerplate Complaint* (ECF 1). Among the impermissible *Complaint* deficiencies are the following. (1) As opposed to required allegations of fact, the CFPB restates elements of its causes of action and threadbare recitals of legal conclusions to support its claims and expansive demand for indeterminant relief. (2) The CFPB lacked statutory authority to bring this lawsuit pursuant to the *Consumer Financial Protection Act of 2010* ("*CFPA*"). (3) The CFPB did not allege causal injury – injury in fact sustained by any consumer supporting jurisdiction. (4) The CFPB did not allege facts supporting the legal conclusion that the subject certificates of deposit were not *securities* (therefore potentially within the CFPA) or that offering said certificates of deposit was "a consumer financial product or service" or is "engaging in deposit-taking activities ... or otherwise acting as a custodian of funds ... for use by or on behalf of a consumer for personal, family, or household purposes." (5) The CFPB admittedly refused to perform its authorized and required investigative functions prior to initiating this enforcement proceeding.

2. The CFPB relies upon the *Complaint* as filed and refused to amend or otherwise state an intent to move to amend. The CFPB filed an *Opposition to Defendants' Motion to Dismiss,* (ECF 13, *"CFPB Response*", "*Response*") [1]. wherein the CFPB took the position that,

> "The Complaint asserts, with specificity, three claims that Defendants deceptively offered to consumers a deposit product—conduct that, if true, would violate the Consumer Financial Protection Act of 2010 (CFPA). The Court unquestionably has subject-matter jurisdiction over these claims; the CFPA itself says that the Court "shall have jurisdiction" over an action brought under the CFPA. Finally, the Bureau had no obligation to include in its Complaint Defendants' claims (which the Bureau does not credit) that they stopped their unlawful conduct and refunded all consumers' wrongfully taken money. In any event, as Defendants themselves concede, their claims are impertinent to whether the Complaint should survive the motion to dismiss." (*CFPB Response*, pp. 1-2).

Contrary to numerous jurisdictional holdings, *infra*, the CFPB erroneously argues the conflicting position that by simply invoking CFPA authority to be a plaintiff, the CFPB may avoid the *standing* burden of proof, asserting subject matter jurisdiction is "unquestionabl[e]".

<u>I – THRESHOLD PROCEDURAL FLAW - LACK OF JURISDICTION</u>

3. A federal court has subject matter jurisdiction over a cause of action only when it "has authority to adjudicate the cause". *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184, 1188 (2007) (repetitive references omitted). Plaintiff bears the burden of showing standing by establishing, *inter alia*, an injury in fact, *i.e.* a concrete and particularized, actual or imminent invasion of a legally protected interest, that is fairly traceable to the challenged action of defendant and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) and that a federal agency plaintiff has the statutory authority to litigate the claims alleged. See, *Seila Law LLC v. Consumer Finance Protection*, 140 S.Ct. 2183 (2020). The existence of subject matter jurisdiction is a threshold inquiry. *Sinochem* at 1188. A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district

[1] The *CFPB Response* did not list Tables of Content or Authorities that format is followed in the *Defendants' Reply*.

court lacks the statutory or constitutional power to adjudicate it". *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When jurisdiction is challenged, the plaintiff "bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted), (*see also Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 639 (2d Cir. 2005); *Seila*, 140 S.Ct. 2183 (2020)). The district court may examine evidence outside of the pleadings to make this determination. *Makarova*, 201 at 113. When considering a motion to dismiss for lack of jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). The frequently referenced inference standard of *Iqbal* and *Twombly* (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 570 (2007)) does not apply to jurisdiction. "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Potter*, 343 F.3d at 623 (quoting *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

A. The CFPB did not allege injury in fact or allegations in support of the legal conclusion that the CFPA applies to Loan Doctor's offered certificates of deposit

4. The CFPB listed its proforma *Demand for Relief* as an empty substitute for alleged injuries in fact. (*Complaint*, pp.14-15). With the Loan Doctor's business records in hand, the CFPB did not allege injury to any consumer or incident of injury reported by any consumer.

5. As to supporting the application of the CFPA, the CFPB's allegation of wrongdoing stated,

> "The Bureau brings this action against Loan Doctor and Radjabli under § 1054 of the Consumer Financial Protection Act of 2010 (CFPA) to address deceptive acts or practices in connection with offering consumers a "certificate of deposit" (CD), purportedly created to generate capital for Loan Doctor's healthcare-loan-origination business." (ECF 1, ¶1).

6. As brought forth in the *Memo MTD*, the *Complaint* preassumed standing and thereby subject matter jurisdiction pursuant to 12 U.S.C. §5491(a), §5481(14) and "independent litigating authority" to enforce the CFPA pursuant to §5564(a), (b). (ECF 1, ¶ 5). The CFPB also assumed, without explanation or support, that the Defendants' alleged wrongdoing (offering certificates of deposit) was within the purview of the CFPA. Inappropriately relying upon an assumption of favorable inferences that the CFPA automatically granted subject matter jurisdiction (*see Potter* at 623), the *Complaint* ignored the preliminary hurdles of its burden of proof. Absent were allegations of injury in fact or allegations with which this Court may conduct the first-tier determination that must be decided. Were Loan Doctor CD's / promissory notes *securities* within the governance of SEC (pursuant to which the CFPB has no statutory authority) or *not securities* (therefore potentially within the CFPA, *also see infra* as to failure to allege injury)?

7. The pleading failure of the lack of allegations of injury is sufficient in and of itself to deny jurisdiction. See, *Nicholas v. Trump*, 433 F.Supp. 3d 581, 586 (S.D.N.Y.) quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013), wherein the Court stated, "[T]he 'Case' and 'Controversy' requirement places the burden on 'those who invoke the 'power of a federal court to demonstrate standing — a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' ".[2] In order to satisfy the first prong of standing —

[2] In addition to the jurisdictional defect, the CFPB avoids the fact that any monetary relief stemming from a violation of a consumer financial law must be causally linked to *consumer injury*. *See, e.g., FTC v. Publishers Bus. Servs., Inc.*, 540 F. App'x 555, 558 (9th Cir. 2013). The consumer injury analysis is required because equitable relief must be tied to *unjust* gains. *See FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 69 (2d Cir. 2006) (noting that "[r]estitution is based on *unjust* payments, not just *overall* payments . . . .") (emphasis added). The CFPB must support its request for relief with an approximation of the facts. *See FTC v. Verity Int'l, Ltd*., 443 F.3d 48, 67 (2d Cir. 2006) ("The FTC bears the initial burden of showing that the amount sought is a reasonable approximation."). Here, the CFPB has not done so. In its *Opposition to Defendants' Motion to Dismiss* (ECF 13, "*CFPB Opposition / Response*"), the CFPB raised its two justifications for seeking undetailed damages beyond the benefit of the bargain to CD holders which undisputedly have been fulfilled and the absence of factual allegations of any loss to any consumer. First, 12 U.S.C. § 5565(a)(2)(E),(G),(H) lists penalties that may be imposed under the statute. (ECF 13, p. 4 fn9). Second, the CFPB now limits (and seeks to amend its Complaint) to a single claim of alleged wrongdoing, that being, "deception under the CFPA" and furthers that damages are not a required element of its now limited deception claim. (ECF 13, p.4).

that the plaintiff has suffered an "injury in fact" — the plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Considering the CFPB's repeated reliance on an assumption versus supporting allegations of facts leading to the conclusion of "likely"[3], it is notable that "trivial or speculative harms", let alone as here no allegations of harm, do not suffice.[4]

8. The CFPB also relies upon the decision in *CFPB v. Citizens Bank, N.A., C.A.*, No. 20-044 WES, 2020 WL 7042251, at *16. (*CFPB Response*, p. 5 fn15). In *Citizens Bank*, the issue was the degree of damages, not, as here, the lack of any allegations of actual damage. The Court's decision denied a Motion to Dismiss, holding that a factual dispute of the degree of alleged damages was not a cause to dismiss pursuant to a Rule 12(b) motion. Inherent in the decision, is the recognition that the existence of damages is *material fact* that must be pled to some extent.

9. As to *security* or not *security*, the Defendants' fact-based Rule 12(1) *MTD* opposition to subject matter jurisdiction requires review of the CFPB's reliance upon presumed CFPB authority under the CFPA to litigate this matter, before proceeding further. The *securities* question belies the CFPB's assumption that CFPA authority applies to this case and reflects upon the CFPB's

---

In regard to 12 U.S.C. § 5565(a)(2)(E),(G),(H), simply listing the statutory penalties that may be imposed does not substitute for well pled allegations of fact.

[3] As stated in the *Memo MTD* ¶ 23, "the *Complaint* relied repeatedly upon CFPB's the conjectural term "*likely*". (ECF 1 - ¶'s 50, 54, 55, 61, 62, 69, 70, 75, 76). The reference to "likely" as the sole support for a cause of action does not supersede the essential basic breach, causation and damages pleading requirements or absolve the CFPB from having to plead facts from which it seeks to buttress the "likely" evidentiary conclusion beyond speculation. Under the *Twomby- Iqbal* standards a pleading cannot be structured purely out of conjecture and conclusions presented as facts. The *Complaint* fails by omission the test because it does not present any factual basis for who, what, how, why, or by its own standard "if" anyone was "likely," deceived or harmed.

[4] "*The act or practice must cause or be likely to cause substantial injury to consumers.* Substantial injury usually involves monetary harm, … Trivial or merely speculative harms are typically insufficient for a finding of substantial injury." *FDIC Consumer Compliance Examination Manual — December 2018*, VII 1.2. Here, the CFPB concedes that with the absence of allegations of injury there is no injury at all let alone substantial injury to consumers.

avoidance of allegations and inquiry into the potentially dispositive question of whether Loan Doctor CD's were *securities* or were not *securities*. The *Memo MTD* listed required inquiries that the CFPB failed to allege as to *securities*. The unmentioned inquiry into the CFPB's standing to sue in this case requires a jurisdictional gatekeeper decision, based upon a preponderance of the evidence (*Potter* at 623), as to the status of Loan Doctor CD's within or excluded from the CFPA. The *Complaint* and *Response* are silent as to this dispositive factually dependent question. Is a CD is a promissory note? If so, apply the *family resemblance test* of *Reves v. Ernst & Young*, 494 U.S. 56 (1990) and decide if the Loan Doctor CD's / promissory notes are or are not *securities*.

10. The *CFPB Response* listed a two-fold answer to the Defendants' questioning subject matter jurisdiction. First as to injury, *CFPB Response* limited the scope of its *Complaint* to "one type of claim—*deception* under the CFPA" and stated that under its rules "injury is not an element of such a claim". (*CFPB Response*, p. 4). Beyond the narrowing of its claim and averment that the lack of consumer injury is inconsequential, the CFPB provided no further allegations, reference to statute or case law that contrary to *Iqbal* and *Twombly* pleading requirements are met by just listing the elements of a cause of action, here *deception.* Second, 12 U.S.C. § 5565(a)(2)(E), (G), (H) simply lists penalties that may be imposed under the statute. (ECF 13, p. 4 fn9). Again, the CFPB merely restates statutory language but does not provide factual allegations specific to this case and fails to overcome its *burden of proof* to allege consumer injury as it must. *Lujan* at 560-61.

11. Second, as to the required initial potentially dispositive *security* or *not security* question, relying on an excerpt from *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020), the CFPB sought to incorrectly categorize the Defendants' Rule 12(b)(1) fact-based motion as a facial attack. The CFPB attempted to avoid any analysis of subject matter jurisdiction by seeking to exclude all evidence beyond the *Complaint*, wherein the CFPB assumed "unquestionabl[e]"

statutory CFPA authority. The CFPB stated that it had "no evidentiary burden" beyond the *Complaint* to establish subject matter jurisdiction. (*CFPB Response*, p. 10).

12. "[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC*, No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.). As to Rule 12(b)(1), contrary to CFPB's limited reference to *Nicholas*, a impartial less selective reading of *Nicholas* at 586, 587 reveals the *Nicholas* Court's opinion regarding the inclusion of evidence beyond the *Complaint* and the plaintiff's burden of proof in response to a fact-based Rule 12(b)(1) motion.

> "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc. v. Rep. of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject matter jurisdiction"). "In opposition to such a motion, [a plaintiff] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal citations and quotations omitted). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57."

Per *Nicholas*, the Defendants have put forth evidence, which this Court may consider, challenging the CFPB's assertion of subject matter jurisdiction. The CFPB may come forth with evidence to dispute the Defendants' challenge or, as here, rely on the *Complaint* as filed.

13. Notably, as to the *securities*, not *securities* question, the Securities and Exchange ("*SEC*") has concluded that the Loan Doctor CD's are securities. "A. My Loan Doctor LLC d/b/a Loan Doctor Financial ("My Loan Doctor") … **Neither My Loan Doctor nor its securities** is registered with the Commission in any capacity." (Exhibit B, SEC July 14, 2020, *In the Matter of Trading of*

*Veritone, Inc.*, HO-13678, *Amended Order Directing Private Investigation and Designating Officers to Take Testimony*, ¶ II A.). Further, SEC via a CID deposed Dr. Radjabli starting July 8, 2020, after the July 6th filing of the CFPB *Complaint* in this matter. Dr. Radjabli was questioned July 8, 9, 15, 16 and 31, 2020. On July 31st, over the objection of counsel, the SEC pursued questioning regarding Loan Doctor and Dr. Radjabli and the alleged acts and occurrences that are the basis of the CFPB's *Complaint*. An SEC *Wells Notice* advise Defendants' counsel that Dr. Radjabli may face alleged violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933; Sections 10(b), 13(d), and 14(e) of the Securities Exchange Act of 1934 and Rules 10b-5, 13d-1, 13d-2, and 14e-8 thereunder; and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 and Rule 206(4)-8 thereunder." (Exhibit C, August 31, 2020, SEC *Wells Notice*).

II - CFPB'S FAILURE TO INVESTIGATE THE BASIS OF ITS CLAIMS

14. The *Memo MTD* raised the issue of the Defendants' full disclosure of its business records voluntarily provided to the CFPB[5]. The CFPB admitted: having the business records; no effort to examine the business records; and no effort to investigate or verify the existence, or absence, of injury to the consumers or remediation (Sect III *infra*) the CFPB is statutorily obliged to protect.[6]

15. As quoted above, the CFPB persists in its untenable position that it is under no obligation to investigate or verify injury, degree, or no injury to consumers. The CFPB inaccurately restated and attempted to reframe its refusal to investigative and verify consumer injury as raised by the

[5] On July 2, 2020, Loan Doctor provided, via counsel Anthony Alexis, business records disclosing: each consumer; the amount received and subsequently refunded to each; bank records of refund wire transfers; and password access to the Loan Doctor's accounting records. ("*Defendants Letter*", EFC 8 and *Memo MTD* ¶ 3, 4).

[6] The CFPB failed to disclose the prior possession of what may be considered *exculpatory* information to this Court. The Defendants rightfully presented the potential ethical breaches engendered by the CFPB's conduct. "These troubling admissions of attempted willful ignorance and the reluctant reckless or intentional misrepresentations to the Court, may be violative of ethical and professional obligations that are not relevant to the resolution of this motion." (*Memo MTD*, ¶ 4). As stated, the potential ethical breaches which this Court may consider in parallel with the *Motion to Dismiss* are presented to this Court in the context of the CFPB's lack allegations of injury or any consumer claim of loss or deceit. The potential ethical breach is in addition to the act of failure to disclose which may be considered as an *equitable factor* in the decision to dismiss this case.

Defendants as an unrequired, "obligation to include in its Complaint Defendants' claims (which the Bureau does not credit) that they stopped their unlawful conduct and refunded all consumers' wrongfully taken money." (*CFPB Response*, pp. 1-2). The issue is not a dismissive non-existent obligation to include defenses in a complaint. The issue is the unvarnished refusal of the CFPB to fulfill its obligation to investigate and substantiate causes of action prior bringing a lawsuit. The CFPB failed to perform and cannot now avoid the consequences of its refusal and failure in its obligation to consider Defendants' *Responsible Business Conduct.*

16. The enabling statute, *Dodd-Frank Wall Street Reform and Consumer Protection Act,* Public Law 111-203 July 21, 2010 ("*Dodd-Frank*"), endowed the CFPB with broad authority and with that the obligation to investigate and conduct pre-enforcement "discovery" of *potential* violations of the CFPA and evaluate corrective compliance.[7] "[the Bureau] will be focusing on quantifiable and unavoidable harm to the consumer."[8]

17. As an investigative and enforcement agency with a "primary emphasis on preventing harm to consumers", the CFPB periodically provides guidance to its staff and entities regulated of the need for cooperative efforts by any entity under investigation and the value of remedial measures. (See, *CFPB Bulletin 2020-01 Responsible Business Conduct: Self-Assessing, Self-Reporting, Remediating, and Cooperating,* issued March 6, 2020 ("*Bulletin 2020-01*", "*Bulletin*", attached as Exhibit D)). The *CFPB Bulletin* lists the factors of "Responsible Business Conduct" (cooperation, remediation, self-assessing, and self-reporting)[9] as among the foremost considerations in

---

[7] *A Practice Guide to Consumer Financial Protection Bureau Regulation, 2020-2021,* § 5:1. The Investigative Powers of the CFPB. The authority of the CFPB to investigate possible violations of the Federal consumer financial law is not limited to "covered persons" or to entities subject to Bureau examination. The Bureau has broad authority to investigate whether *any* person (including individuals) or entity has violated a provision of "Federal consumer financial law" that the CFPB enforces. Title X § 1052, 12 U.S.C. § 5562; 12 C.F.R. § 1080.4.

[8] E-mail from Acting Director Mick Mulvaney to CFPB Staff (Jan. 23, 2018).

[9] "Other factors the Bureau considers in determining how to resolve violations of Federal consumer financial law include, without limitation, (1) the nature, extent, and severity of the violations identified and any associated consumer

evaluating an entity's mitigation of harm to consumers, prior to bringing any enforcement action or non-public review. (*Bulletin*, pp.1-2). Preceding enforcement, the CFPB must "favorably consider" if the entity "engages in responsible conduct." In our case, the CFPB was silent as to its own indications that enforcement was not advised.

18. The CFPB ignored its own edict and refused to verify, via the Defendants' voluntarily remedial acts and business records submission, that the Defendants fully compensated consumers, shut down Loan Doctor and cooperated fully and completely with the CFPB. Defendants' business conduct could not have been more responsive to the CFPB. The CFPB's complete lack of consideration or compliance with its own guidelines are evident. CFPB counsel conceded having failed to address any of these *Responsible Business Conduct* factors, instead willfully ignored the Defendants' proffered evidence and failed to conduct any investigation at all. Counsel's complete disregard of the CFPB's guidelines and failure to consider evidence relevant to the decision to pursue enforcement calls into question professional conduct and the viability of this action.

## III – CONCLUSION

19. The CFPB's *Complaint* and *Response* do not meet the minimal pleading standards and regrettably force the Defendants to address an action brought in contradiction to the Plaintiff's obligatory investigative and pre-enforcement procedural requirements.

This 27th of January 2021.

Submitted via ECF by,

/s/ Michael Strage
Michael Strage
Law Office of Michael Strage
425 Madison Ave, Suite 902
NYC, NY 10017, (646) 642-0701
michaelstrageesq@gmail.com
Attorney for Defendants

---

harm; (2) an entity's demonstrated effectiveness and willingness to address the violations; and (3) the importance of deterrence, considering the significance and pervasiveness of the potential consumer harm." (*Bulletin*, fn1, p. 2).