**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BUREAU OF CONSUMER FINANCIAL PROTECTION,

*Plaintiff,*

Civil Action No. 20-CV-05159 ALC – BCM

v.

MY LOAN DOCTOR LLC d/b/a
LOAN DOCTOR and
DR. EDGAR RADJABLI

*Defendants.*

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' SECOND AMENDED MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

**TABLE OF CONTENTS**

**Page**


I. PREFACE ........ 1

II. LEGAL STANDARD ........ 2

A. FAILURE TO STATE A CLAIM ........ 2

B. *RES JUDICATA* – CLAIM PRECLUSION AND ISSUE PRECLUSION ........ 3

C. JUDICIAL ESTOPPEL ........ 6

III. DISCUSSION ........ 7

A. *RES JUDICATA* ........ 7

B. DOCTRINE OF JUDICIAL ESTOPPEL ........ 12

C. STANDING / JURISDICTION ........ 13

D. FAILURE TO PLEAD DAMAGES AND CONCEALMENT OF INFORMATION KNOWN TO THE CFPB ........ 15

E. FAILURE TO ADEQUATELY PLEAD ALLEGED DECEPTIVE ACTS AND PRACTICES ........ 20

VI. CONCLUSION AND RELIEF REQUESTED ........ 24

# TABLE OF AUTHORITIES

**Page(s)**

*Securities and Exchange Commission v. Edgar Radjabli, Apis Capital Management, LLC and My Loan Doctor, LLC*, 2:21-CV-01761-MBS U.S.D.C. .................................. 1

*Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ........................................ 2

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)........................................................................ 2

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.2011)........................................ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................................... 3

*Sun Co., Inc. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 368 (E.D. Pa. 1996)........................................................................................................................ 3

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-1409 (3d Cir. 1991). ...... 3

*Singh v. Wells*, 445 F. App'x 373, 375 (2d Cir.2011)........................................................ 3

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ........................................................ 3

*New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017)........................................................................................................................ 3

*New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)* ................................................ 5

*Greenburg v. Board of Governors of the Federal Reserve System*, 968 F.2d 164, 168 (2nd Cir.1992)........................................................................................................ 4

*N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2nd Cir.1983) ............. 4

*Allen v. McCurry*, 449 U.S. 90, 94 (1980)........................................................................... 4

*Monahan v. NYC Dept. of Corrections*, 214 F3d 275 (2d Cir.2000)............................ 5

*Alpert's Newspaper Daily, Inc. v. The New York Times*, 876 F2.d 266, 270 (2d Cir. 1989)........................................................................................................................ 5

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365.................................................................. 5

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ..................................................................... 5

*LUCKY BRAND DUNGAREES, INC.* V. *MARCEL FASHIONS GROUP, INC.*, 140 S. CT. 1589, 1594 (2020)........5

*B&B HARDWARE, INC. V. HARGIS INDUS., INC.*, 135 S. CT. 1293, 1306 (2015)........5

*ANTHRACITE COAL CO. V. ADKINS*, 310 U.S. 381 (1940)........5

*SAFIR V. GIBSON*, 432 F.2D 137 (2D CIR. 1970)........5

*PARKLANE HOSIERY CO. V. SHORE*, 439 U.S. 322, 326 (1979)........5

*CROMWELL V. COUNTY SAC*, 94 U.S. 351 (1876)........6

*TAIT V. WESTERN MARYLAND RY. CO.*, 289 U. S. 620 (1933)........6

*CF. GUNTER V. ATLANTIC COAST LINE R. CO.*, 200 U. S. 273, 284-289 (1906)........6

*STOLL V. GOTTLIEB*, 305 U. S. 165 (1938)........6

*TREINIES V. SUNSHINE MINING CO.*, 308 U. S. 66 (1939)........6

*ADELPHIA RECOVERY TRUST V. GOLDMAN, SACHS & CO.*, 748 F.3D 110, 116 (2D CIR. 2014)........6

*IN RE ADELPHIA RECOVERY TRUST*, 634 F.3D 678, 695-96 (2D CIR. 2011)........6

*DEROSA V. NAT'L ENVELOPE CORP.*, 595 F.3D 99, 103 (2D CIR. 2010)........6

*SINOCHEM INT'L CO. LTD. V. MALAYSIA INT'L SHIPPING CORP.*, 549 U.S. 422, 430–31 (2007)........13

*MORRISON V. NAT'L AUSTRALIA BANK LTD.*, 547 F.3D 167 (2D CIR. 2008)........13

*ARAR V. ASHCROFT*, 532 F.3D 157, 168 (2D CIR.2008)........13

*MILLER YACHT SALES, INC. V. SMITH*, 384 F.3D 93, 97 (3D CIR. 2004)........14

*FTC V. PUBLISHERS BUS. SERVS., INC.*, 540 F. APP'X 555, 558 (9TH CIR. 2013)........15

*FTC V. VERITY INT'L, LTD.*, 443 F.3D 48, 69 (2D CIR. 2006)........15

*CFPB V. RD LEGAL FUNDING, LLC*, 332 F. SUPP. 3D 729, 772–73 (S.D.N.Y. 2018)........16

*FTC V. KUYKENDALL*, 371 F.3D 745, 766 (10TH CIR. 2004)........18

*WOODS V. WELLS FARGO BANK, N.A.*, 733 F.3D 349, 358 (1ST CIR. 2013)........20

*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989 .................................. 20

*FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1291–92 (D. Minn. 1985) ............... 20

*Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984) ............................................ 22

*CFPB v. NDG Fin. Corp.*, 15-cv-5211 (CM), 2016 WL 7188792, at *14 (S.D.N.Y. Dec. 2, 2016) ........................................................................................................ 22

*FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 303 (S.D.N.Y. 2008) .......... 22

## I - PREFACE

1. The Bureau of Consumer Financial Protection (CFPB) brought this case on behalf of consumers against My Loan Doctor LLC and Dr. Edgar Radjabli (*CFPB Complaint* filed July 6, 2020, ECF 1), "to address deceptive acts or practices in connection with [Loan Doctor] offering consumers a 'certificate of deposit' (CD),". (ECF 1, ¶ 1). The CFPB stated statutory authority pursuant to the *Consumer Financial Protection Act of 2010* (CFPA). The CFPB's alleged FACTS included information from the Loan Doctor website (ECF 1, ¶s 11 - 18), and business records voluntarily provided by Loan Doctor via counsel. (Exhibit A, *Declaration of Anthony Alexis*). The *CFPB Complaint* fails to aver or allege what those acts or practices were with required specificity. The *CFPB Complaint* lacks factual allegations or claims that any consumer (true parties-at-interest) complained of or suffered any harm.

2. Defendants brought *Defendants' Motion to Dismiss the Plaintiff's Complaint* (ECF 11-12, *MTD*, dismissed without prejudice ECF 23) to address the deficiencies of the *CFPB Complaint*. The *MTD* sought dismissal of the *CFPB Complaint* based upon failure to state claims upon which relief could be granted. The pleading flaws of the unamended *CFPB Complaint* reiterated here are: lack of CFPB subject matter jurisdiction to bring a case regarding offering Certificates of Deposit (CDs); absent damages - no allegation of harm to any consumer; concealment of information known to the CFPB; failure to verify the absence of damages to any consumer; inadequately pled allegations seeking to characterize CDs as an offer of consumer financial products or services; and inadequately pled essential elements of alleged unfair or deceptive practices.

3. During the adjudication of the *CFPB Complaint* and *MTD*, the Securities and Exchange Commission (SEC) brought *Securities and Exchange Commission v. Edgar Radjabli, Apis Capital*

*Management, LLC and My Loan Doctor, LLC,* 2:21-CV-01761-MBS U.S.D.C. S. Carolina filed June 11, 2021. ("*SEC Complaint"*, Exhibit E). The *Final Judgment as to Defendants Edgar M. Radjabli, Apis Capital Management LLC and My Loan Doctor LLC* was entered July 19, 2021 ("*SEC Final Judgment"*, Exhibit F). The basis for claims and issues raised by the two U.S. agencies on behalf of the same My Loan Doctor consumers (true parties-at-interest) against the same defendants Edgar Radjabli and My Loan Doctor alleging misleading and deceptive means in the offering of Certificates of Deposit (CDs) to consumers. The *Complaints* list mirror image factual allegations. The U.S. agencies coordinated efforts against the Defendants sharing discovery and jointly negotiating the economic terms of the S. Carolina settlement.[1] Acting in privity, the CFPB is a Third-Party Beneficiary having shared in the recovery / remedy imposed in the *SEC Final Judgment.*[2] The adjudication of Defendants' alleged acts in the *SEC Final Judgment* has a preclusive effect on claims brought and issues currently raised by the CFPB.

## II – LEGAL STANDARD

### A – FAILURE TO STATE A CLAIM

4. Whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The question to be addressed - Is the complaint legally sufficient? When resolving a motion to dismiss under FRCivP 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether

[1] The SEC questioned defendant Edgar Radjabli for five days July 8, 9, 15, 16 and 31, 2020 (after the filing of the *CFPB Complaint* July 6, 2020).

[2] "During the pendency of this payment plan, up to $125,000 of the $600,000 total amount ordered to be paid may be offset in an amount equal to payments made by Defendants to the Bureau of Consumer Financial Protection's ("CFPB") Civil Penalty Fund in connection with *CFPB v. My Loan Doctor LLC and Radjabli*, 20-cv-05159 (S.D.N.Y.)." ( U.S.D.C. S. Carolina *Final Judgment.* Sect. IX. p.9)

they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.2011) internal quotation marks omitted). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft* @ 678, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, @ 678, citing *Twombly* @ 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly* @ 556. The Court is not bound by legal conclusions masquerading as factual allegations. *Id.*, quoting *Rothstein* @ 94; *Iqbal* @ 678, citing *Twombly* @ 555.

5. The District Court may "grant a Rule 12(b)(1) motion when the claim clearly appears to be immaterial and made solely for the basis of obtaining jurisdiction or is wholly unsubstantial and frivolous." *Sun Co., Inc. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 368 (E.D. Pa. 1996) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-1409 (3d Cir. 1991).

6. "In adjudicating a motion to dismiss, a court may consider only the complaint, written instruments attached to the complaint as exhibits, statements or documents incorporated by reference, and documents on which the complaint heavily relies." *Singh v. Wells*, 445 F. App'x 373, 375 (2d Cir.2011); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), whether disclosed or omitted in the pleadings and matters subject to judicial notice (such as a U.S.D.C. Final Judgment), *New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

B. *RES JUDICATA* – CLAIM PRECLUSION AND ISSUE PRECLUSION –

7. The term *Res Judicata* is often used to include the Doctrines of res judicata / claim preclusion and collateral estoppel / issue preclusion. As stated by the Supreme Court in *New*

*Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001),

> "…the res judicata doctrines commonly called claim and issue preclusion[.] Claim preclusion generally refers to the effect of a prior judgment foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the same issue arises on the on the same or different claim."

8. The terms "claim" and "issue" are used alternatively in the application of the Doctrines of *Res Judicata* to clarify what may be barred in a subsequent litigation. Claims and issues are considered subject to *Res Judicata* if they involve factually redundant scenarios inefficient to revisit. The intent of the affirmative defense of *Res Judicata* may be summarized as the avoidance of needless duplication of litigated disputes spurred by the prospect of a more favorable outcome and/or additional recompense based upon recloaked claims or issues.

9. "The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits in one action bars subsequent relitigation of the same claim by the same parties and by those in privity with the parties." *Greenburg v. Board of Governors of the Federal Reserve System*, 968 F.2d 164, 168 (2nd Cir.1992) (quoting, *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2nd Cir.1983). The repetitive claim bar applies, "whether or not relitigation of the claim raises the same issues as the earlier suit."… "[T]hat bar extends both to 'issues actually decided in determining the claim asserted in the first action and [to] issues that could have been raised in the adjudication of that claim.'" "However, preclusion is limited to the transaction at issue in the first action." *Greenburg v. Board of Governors of the Federal Reserve System*, 968 F.2d 164, 168 (2nd Cir.1992) (quoting, *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2nd Cir.1983).*Greenburg* @ 168, quoting, *N.L.R.B.* @ 1259; *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

10. The Second Circuit provided factors for consideration in the application. "Whether or not

the first judgment will have preclusive effect depends in part on [1] whether the same transaction or series of transactions is at issue, [2] whether the same evidence is needed to support both claims, and [3] whether the essential facts of the second were present in the first". *Monahan v. NYC Dept. of Corrections*, 214 F3d 275 (2d Cir.2000) quoting NLRB @1260 (enumeration added).

11. On the question of privity, the Court stated that the "'formalities of legal relationships provide clues but not solutions.' Instead, a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.'" *Monahan* @ 285, quoting *Alpert's Newspaper Daily, Inc. v. The New York Times*, 876 F2.d 266, 270 (2d Cir.1989). Further, the party against whom preclusion is sought had a full and fair opportunity to litigate the issue in the prior litigation. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992, *cert. denied*, 508 U.S. 952 (1993).

12. "Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) quoting, *New Hampshire* @ 748; See also, *Lucky Brand Dungarees, Inc.* v. *Marcel Fashions Group, Inc.*, 140 S. Ct. 1589, 1594 (2020). Further, issue preclusion can apply where the first and second claims were brought under different statutes provided that the statutory standards are sufficiently similar that the same "issue" is raised. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1306 (2015). The Supreme Court explained that the doctrine has a dual purpose: (i) to protect litigants from the burden of relitigating an identical issue with the same party or his privy (privity of Federal Agencies see, *Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940), *Safir v. Gibson*, 432 F.2d 137 (2d Cir. 1970), *cert. denied*, 91 S.Ct. 241 (1970)); and (ii) to promote judicial economy by preventing needless litigation. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

13. The Supreme Court considered *Res Judicata* in the context of U.S. governmental agencies. A judgment is *Res Judicata* in a second action upon the same claim between the same parties or those in privity with them. *Cromwell v. County Sac*, 94 U.S. 351 (1876). There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *Res Judicata* in relitigation of the same issue between that party and another officer of the government. *Tait v. Western Maryland Ry. Co*., 289 U. S. 620 (1933). The crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy. *Cf. Gunter v. Atlantic Coast Line R. Co.*, 200 U. S. 273, 284-289 (1906). The SEC represented the interest of the CFPB. The CFPB is a named beneficiary under the terms of the *SEC Final Judgment*. Further, in general, *Res Judicata* applies to questions of subject matter and personal jurisdiction. *Stoll v. Gottlieb*, 305 U. S. 165 (1938); *Treinies v. Sunshine Mining Co*., 308 U. S. 66 (1939).

C. JUDICIAL ESTOPPEL

14. The related equitable Doctrine of *Judicial Estoppel* prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding. *New Hampshire* @749. "[T]he exact criteria for invoking judicial estoppel will vary based on 'specific factual contexts.'" *Adelphia Recovery Trust v. Goldman, Sachs & Co*., 748 F.3d 110, 116 (2d Cir. 2014), (construing, *New Hampshire* @ 749-51). Generally, "judicial estoppel will apply if: [A] a party's later position is 'clearly inconsistent' with its earlier position; [B] the party's former position has been adopted in some way by the court in the earlier proceeding; and [C] the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In re Adelphia Recovery Trust*, 634 F.3d 678, 695-96 (2d Cir. 2011) (quoting, *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)).

III – DISCUSSION

A. *RES JUDICATA*

a. Common Denominators to be Considered in the Application of Claim and Issue Preclusion

15. As listed in the cases referenced *supra* that annunciate and apply the common denominators to be considered in the application of claim and issue preclusion, the standards are: (1) A final judgment on the merits by a court of competent jurisdiction; (2) The same parties or privities; (3) The same transactions or series of transactions at issue - i.e. subject matter; (4) Evidence in common in support of alleged claims; (5) Essential facts in common; (6) Successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit; and (7) The bar extends to issues actually decided in determining the claim asserted in the first action and to issues that could have been raised in the adjudication of that claim.

16. The Common Denominators of the alleged facts, circumstances, claims and issues of the *SEC* and *CFPB Complaints* and *SEC Final Judgment* are such that *Res Judicata* applies. (1) Final Judgment – The U.S.D.C. of S. Carolina, a court of competent jurisdiction, entered the *SEC Final Judgment*.[3] The U.S.D.C. of S. Carolina declared jurisdiction over the parties and the subject matter (CDs). The SEC authority and subject matter issues of law have been litigated.

> "The Securities and Exchange Commission having filed a Complaint and Defendants Radjabli, Apis Capital Management LLC ("Apis Capital"), and My Loan Doctor LLC ("Loan Doctor") (collectively "Defendants") having entered general appearances; consented to the Court's jurisdiction over Defendants and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:" *SEC Final Judgment* (Emphasis added).

[3] "Generally, consent judgments do not have an issue preclusion effect on future litigation unless the parties intended the prior judgment to operate as a final adjudication of an issue." (emphasis added) *FTC v. Wilcox*, 926 F.Supp. 1091 (1995), referring to, *Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc.*, 575 F.2d 530 (5th Cir1978) and *Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir.1986).

(2) Parties in Common – Edgar Radjabli and My Loan Doctor LLC are the Defendants. The *SEC* and *CFPB* are federal agencies. Each alleged authority to pursue matters concerning CDs on behalf of the same exact consumers (the Real Parties-in-Interest). The federal agencies collaborated in non-court supervised "discovery" and shared in the recovery imposed in the *SEC* Case. See fns 1, 2 *supra*. (3) Same transactions / subject matter - the *SEC* and *CFPB Complaints* allege as the basis for their claims the offering of the identical Certificates of Deposit (CDs) to the identical consumers and the misuse of the identical funds received.

> ***SEC Complaint*** (Entry Number 1, *Complaint*, ¶ 4).
> "Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendants Edgar M. Radjabli ("Radjabli"), Apis Capital Management, LLC ("Apis Capital"), and My Loan Doctor, LLC dba Loan Doctor Financial ("Loan Doctor") (collectively "Defendants") and alleges as follows:…
> 4. …Radjabli raised $19.95 million from 461 investors in an unregistered, fraudulent offering launched in August 2019, of a security called Health Care Finance High Yield CD Account, which guaranteed a 6% return. Among other things, Radjabli made materially false and misleading representations to investors about how their funds would be used. In particular, Radjabli represented that funds raised would be used by Loan Doctor to originate loans to healthcare professionals, which then would be securitized and sold to large institutional investors. Loan Doctor never originated or securitized any loans. Instead, Radjabli invested the bulk of the investor funds in unsecured and uninsured loans to digital asset lending firms, and he loaned almost $1.8 million of investor proceeds to Apis Capital." (emphasis added)
>
> ***CPFB Complaint*** (ECF 1 ¶s 1, 33)
> 1. "The Bureau brings this action against Loan Doctor and Radjabli under the § 1054 of the Consumer Financial Protection Act of 2010 (CFPA) to address deceptive acts and practices in the connection with offering consumers "'certificate of deposit' (CD), purportedly created to generate capital for Loan Doctor's healthcare-loan-origination business." …
> 11. Radjabli founded Loan Doctor in July 2019 with the following business plan: Loan Doctor would originate loans for healthcare professionals wanting to purchase or start a new practice; Loan Doctor would then immediately sell those loans for a profit to pre-committed secondary investors.
> 12. To purportedly fund these loans before selling them to buyers, in August 2019, Loan Doctor began offering consumers what it dubbed a "Healthcare Finance (HCF) Savings CD Account," or an "HCF High Yield CD Account," …
> 33. In fact, most of the money that consumers deposited with Loan Doctor was not held in the types of accounts described on Loan Doctor's website. Instead, money

> that consumers deposited with Loan Doctor was placed in a hedge fund owned by Radjabli and then invested in securities, or it was invested with a securities broker-dealer that offered individuals high-interest loans backed by those individuals' stock holdings. (emphasis added)

(4) Evidence in common in support of alleged claims - The *SEC* and *CFPB Complaints* allege offering of CDs to consumers, misleading and deceptive online solicitations and information promoting the CD offering, receipt of consumer funds, and diversion of CD funds to a hedge fund from the declared intended use of funds to originate loans to healthcare professionals.

> ***SEC Complaint*** (Entry Number 1, ¶38, 40, 42-47)
> "38. Radjabli's third scheme involved a fraudulent, unregistered public offering conducted by Loan Doctor. Between August 2019 and April 2020, Loan Doctor raised $19.95 million though its offering of its HCF High Yield CD Account (the "HCF CD"), purportedly paying guaranteed 6% interest…
> 40. Loan Doctor marketed the HCF CD through a variety of media: its public website, press releases, targeted Facebook and Google advertisements, emails to individuals who had expressed interest in the HCF CD, and emails to registered investment advisors, as well as through interviews of Radjabli by news organizations…
> 42. In a press release issued on August 22, 2019 announcing the launch of the HCF CD, Loan Doctor falsely and misleadingly stated that the funds it raised from investors would be used "to fill short term lending needs to its healthcare clients, before the loans are securitized and sold to large institutional investors." Loan Doctor further stated that "[t]he security of the [HCF CD] is ensured as it is backed by cash and cash equivalent funds that are FDIC insured and an additional $100MM umbrella through Lloyds of London, making it as safe as a savings account or CD."
> 43. Despite the use of the term "CD," the HCF CDs were not traditional CDs, but in fact were offered and sold as securities.
> 44. Loan Doctor's website contained similar false and misleading statements. For example, language on the website, directly or indirectly created and drafted by Radjabli, stated: "Similar to a bank, the funds deposited in the account allow Loan Doctor to fund healthcare lending needs during very short time periods, before the originated loans are securitized and sold to large institutional investors." Loan Doctor's website also stated that before making a loan, it would already have an investor lined up to purchase the loan. The website also stated that "[t]he funds in the CD account are deposited at either US banks where they are covered by FDIC insurance, or in the case of cash alternatives, by Lloyd's of London up to $100MM."
> 45. The statements made by Loan Doctor in its August 22, 2019 press release and on its website were materially false and misleading. Loan Doctor did not originate a single loan and only a small portion of investor funds were held in FDIC-insured

accounts. Investor funds were also not insured by Lloyd's of London. Instead, Loan Doctor used the bulk of the investor funds to make unsecured loans to several crypto currency lending firms as well as to make $1.79 million in loans to Apis Capital.

46. Loan Doctor's misrepresentations and omissions regarding its use of investor funds were material because a reasonable investor would have wanted to know that their funds were being used to make high-risk, unsecured loans to digital asset lending firms, rather than being held in insurance-protected accounts and used to originate loans to healthcare professionals where Loan Doctor already had an investor lined up to purchase the loan.

47. Radjabli knew, or was reckless not knowing, that statements made about Loan Doctor's use of investor funds were materially false and misleading. Radjabli had sole control over the allocation of investor funds and was aware that Loan Doctor was not using the investor funds in the manner described to investors."

***CFPB Complaint*** (ECF 1, ¶s 14,15)

"14. Loan Doctor advertised that any deposit made by a consumer would result in the purchase of a CD that matured monthly and could be withdrawn, with interest, with one month's notice.

15. Loan Doctor marketed its HCF High Yield CD Account through a variety of media: its website, targeted Facebook and Google advertisements, press releases, emails to individuals who had expressed interest, and emails to registered investment advisors. Radjabli wrote or edited most of the content for Loan Doctor's website and marketing material.

16. Starting in August 2019, Loan Doctor took more than $15 million from at least 400 consumers who opened and deposited money into an HCF High Yield CD Account.

17. In its marketing materials, including on its website, Loan Doctor made false and inconsistent representations about both its business model and the stability of the funds deposited in its CDs.

18. Specifically, Loan Doctor:

a. falsely represented that it used the money deposited in its HCF High Yield CD Accounts to originate loans for healthcare professionals and that it always had a buyer lined up for the loans before each loan's origination;

b. falsely represented that, to the extent that money deposited in one of its HCF High Yield CD Accounts was not being used to originate loans, the money would be held in one of the following locations—an FDIC-insured account, a Lloyd's of London-insured account, or a "cash alternative" or "cash equivalent" account;

c. falsely touted the stability of its HCF High Yield CD Accounts by likening those accounts to various types of savings accounts and falsely describing itself as a "commercial bank"; and

d. falsely represented past returns on its HCF High Yield CD Accounts."

(5) Essential facts in common – The *SEC* and *CFPB Complaints* list the same factual allegations: the offering of CDs to consumers; misleading statements as to how CD funds would be secured and invested; and the divergence of consumer funds.

(6) Successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit – The *SEC* and *CFPB* claim actions "sound in fraud" regarding the offering and use of CD funds. Each alleges false and misleading statements to consumers. Notably, each fails to allege damages to any consumer. (See, *Judicial Estoppel* ¶ 18, 19, *infra*). The application of *Res Judicata* is not deterred by the differing means of the SEC and CFPB. Whether in the context of actions pursuant to the CFPA or Securities Acts, the claims alleged in both actions are offering of CDs, false and misleading representations to consumers in the offering of CDs, and diversion of the identical CD funds of the identical consumers.

(7) The relitigation bar extends both to issues actually decided in determining the claim asserted in the first action and to issues that could have been raised in the adjudication of that claim – The later filed but earlier decided *SEC* could and should have been brought within the CFPB case. The Defendants' November 12, 2020 *Request for a Pre-Motion Conference* in anticipation of their motion to dismiss (ECF 8) gave notice to the SEC and raised the issue of joining the SEC as an involuntary plaintiff. The SEC did not respond. The CFPB opposed joining the SEC stating,

> "[t]here is no cause to worry about the possibility of 'inconsistent' results – one could easily imagine that Defendants engaged in conduct that violated federal securities laws *and* in other conduct that violated the CFPA's prohibition of deceptive acts." (*emphasis* in original) (*CFPB Response to Request for a Pre-Motion Conference,* ECF 9, Sect. V).

Contrary to the invitation to "imagine" unstated "other conduct", the "conduct" alleged in the

*CFPB* and later filed *SEC Complaint* are identical.[4] The CFPB's earlier stated position is contradicted by the mirror image factual allegations and claims of the *Complaints*.

B. DOCTRINE OF JUDICIAL ESTOPPEL

17. The related equitable Doctrine of *Judicial Estoppel* bars the CFPB from contradicting averments made by the SEC in support of its S. Carolina claims. As to Jurisdiction, the SEC alleged statutory standing based upon a CD being a security and therefore under the *Securities Acts*. As to damages (disgorgement and restitution) and closing of Loan Doctor, the SEC stated,

> "Radjabli ultimately reimbursed investors their funds with the 6% interest and closed down Loan Doctor in the face of ongoing Commission and Consumer Financial Protection Bureau ("CFPB") investigations." *SEC Complaint* ¶ 4.

18. Acknowledging the reimbursement of all consumer funds, the SEC did not seek restitution

[4] Procedurally, the *SEC* should have Joined or Intervened in the *CFPB* case in the SDNY versus filing a separate action in S. Carolina. SEC chose not to Intervene. Once filed, the *SEC* would have been required to Join this case had the Defendants' so moved rather than arriving at a coordinated settlement with both agencies. The time span of five weeks between the filing of the *SEC Complaint* and *Final Judgment,* as stressed by the SEC, prevented the procedural conformity that led to the present situation.
FRCivP 19. - Required Joinder of Parties (a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.
(1) *Required Party…* must be joined as a party if: … (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: …
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
FRCivP 20. Permissive Joinder of Parties (a) PERSONS WHO MAY JOIN OR BE JOINED.
(1) *Plaintiffs.* Persons may join in one action as plaintiffs if:
(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.
FRCivP 24. Intervention
(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
(1) is given an unconditional right to intervene by a federal statute; or
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
(b) Permissive Intervention.
(1) *In General.* On timely motion, the court may permit anyone to intervene who:
(A) is given a conditional right to intervene by a federal statute; or
(B) has a claim or defense that shares with the main action a common question of law or fact.
(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
(A) a statute or executive order administered by the officer or agency; or
(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

or disgorgement from Edgar Radjabli or My Loan Doctor LLC. The SEC having averred as such in its *Complaint*, triggered *Judicial Estoppel* of those facts as to the CFPB. The CFPB is barred from claiming damages based upon known to have been reimbursed consumer funds. Equally, *Judicial Estoppel* bars the CFPB a conflicting claim supporting ongoing restraint,

> "On March 26, 2020, Loan Doctor partially heeded the Bureau's request, removing all new offerings of its CD product from its website. But Loan Doctor did not cease operating." (*CFPB Complaint* ¶ 45, emphasis added).

19. Applying the standards of *In re Adelphia Recovery Trust*, the CFPB should not be allowed to contradict the positions taken by the SEC to the CFPB's benefit and the Defendants' detriment. [A] CFPB's assumption of statutory authority and claims of restitution and disgorgement contradict the averments of the SEC. [B] The *SEC Final Judgment* in acknowledging that the SEC had statutory authority to proceed also acknowledged that a CD is a security, therefore not, "an offer of consumer financial products or services" under the CFPA. As to damages, the SEC did not seek, and the *Final Judgment* does not include disgorgement from the Defendants Loan Doctor or Dr. Radjabli of any net profits gained as a result of the conduct alleged in the Complaint. The SEC acknowledged full reimbursement. [C] In contrast, the *CFPB Complaint* seeks restitution and disgorgement of the non-existent funds, "c. order Defendants to pay redress to consumers; d. order disgorgement of Defendants' ill-gotten gains" (*CFPB Complaint*, *Demand for Relief*).

C. STANDING / JURISDICTION - *CFPB* lacks standing and thereby personal or subject matter jurisdiction under the *Consumer Financial Protection Act of 2010* (*CFPA*) to pursue claims regarding Certificates of Deposit (CDs)

20. This Court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in the suit (subject-matter jurisdiction) . . ." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), *aff'd* 130 S. Ct. 2869 (2010), quoting *Arar v.*

*Ashcroft*, 532 F.3d 157, 168 (2d Cir.2008). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id*

21. The CFPB solely relied upon allegations that Loan Doctor acting with Dr. Radjabli offered consumers a "Healthcare Financer (HCF) Savings CD Account" or a "HCF High Yield CD Account." (*CFPB Complaint*, ¶ 12). The CFPB's allegations stated in ¶'s 13 – 19, 24, 27, 35, 37, 42 - 47, 52, 53, 55, 58, 62, 67, 70, 73 and 76 all reiterate the basis of the allegations of wrongdoing is the offering of CD's. As alleged by the CFPB, the *CFPB Complaint* was brought "under §1054 of the Consumer Financial Protection Act of 2010 (CFPA) to address deceptive acts and practices in connection with offering consumers a 'certificate of deposit' (CD)," (*CFPB Complaint*, ¶ 1). The CFPB alleged standing and jurisdiction pursuant to 12 U.S.C. §5491(a), §5481(14) and litigating authority to enforce the CFPA pursuant to §5564(a), (b). (*CFPB Complaint*, ¶ 5). Once challenged, the CFPB has the burden of proof and persuasion as to the existence of authority to bring and sustain this action. *Seila Law LLC v. CFPB*, 591 U.S. ___, 140 S.Ct. 2183 (2020). The plaintiff, "bears the burden of establishing the court's personal jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

22. The U.S.D.C. of S. Carolina declared personal and subject matter jurisdiction over U.S. Government claims and issues regarding the offering of CDs[5]. The Court accepted the statutory authority of the SEC to litigate matters concerning the offering of CDs pursuant to the *Securities Act of 1933* or the *Securities Exchange Act of 1934* ("*Securities Acts*"), thereby declaring the CDs

[5] Claims and issues associated with the manner, method or means of the offering of CDs that were or could have been litigated in S. Carolina are equally subject to *Res Judicata*. See discussion *supra*.

at issue to be *Securities* not subject to the CFPA or thereby CFPB statutory authority.

23. The CFPB acting with the SEC: had knowledge of the prior participation of the SEC against the Defendants; opposed joining the SEC in its SDNY proceeding (ECF 9); and was aware that the S. Carolina Court had determined that it had jurisdiction over the claims and issues related to the Defendants offering of CDs. The CFPB did not oppose, join or intervene in the S. Carolina proceedings or notify this Court of the conflict in jurisdiction. The CFPB has no basis upon which to claim jurisdiction regarding the offering of CDs in the face of the S. Carolina courts unambiguous rejection. The CFPB may not bring or maintain its causes of action in the SDNY.

## D. FAILURE TO PLEAD DAMAGES AND CONCEALMENT OF INFORMATION KNOWN TO THE CFPB

24. If this Court finds that the CFPB has statutory authority under the CFPA to pursue and maintain this case, other actions, or lack actions, by the CFPB require dismissal.

25. The CFPB is an investigative and enforcement agency. Under that investigative authority, prior to initiating an action, the CFPB possessed the means and resources, and as any plaintiff, the obligation to establish, present and certify the reasonable evidentiary basis for its claims against the Defendants. FRCivP 11(b). After presumably conducting the required pre-action investigation, the CFPB failed to allege facts to support its plea for damages or that any provable documented damages in fact exist. Any monetary relief stemming from a violation of a consumer financial law must be causally linked to *consumer injury*. *See, e.g.*, *FTC v. Publishers Bus. Servs., Inc.*, 540 F. App'x 555, 558 (9th Cir. 2013). The consumer injury analysis is required because equitable relief must be tied to *unjust* gains. See*, FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 69 (2d Cir. 2006) (noting that "[r]estitution is based on *unjust* payments, not just *overall* payments . . .") (*emphasis* added).

26. The *CFPB Complaint* presumes that unpled damages exist. Absent are any allegations of

the existence or degree of damages, an essential element, which was not alleged beyond vague speculation and non-factually supported conclusions. The CFPB's seeks: enjoining from future violations; unspecified damages or other monetary relief; unspecified redress to consumers; disgorgement of unspecified funds; and unspecified civil penalties. (*CFPB Complaint*, *Demand for Relief*). Lacking allegations of actual damages, and without supporting factual recitation or allegation let alone an iota of evidentiary support, the *Complaint* relied repeatedly upon CFPB's presumptions and the conjectural term "*likely*". (*CFPB Complaint,* ¶'s 50, 54, 55, 61, 62, 69, 70, 75, 76). The referenced statutes, draft by the CFPB, do include the term "likely". The reference to "likely" as the sole support for a cause of action does not supersede the essential basic breach, causation and damages pleading requirements or absolve the CFPB from having to plead facts from which it seeks to buttress the "likely" evidentiary conclusion beyond speculation. Under the *Twomby- Iqbal* standards a pleading cannot be structured purely out of conjecture and conclusions presented as facts. Presumptions alone do not pass the test. The *CFPB Complaint* fails by omission. It does not present any factual basis as to who, what, how, why, or by its own standard "if" any consumer was "likely," deceived or harmed.

27. The CFPB did not allege that any consumer had been deceived or mislead by statements on the Loan Doctor website or acts of Loan Doctor. The CFPB tacitly admits its inability to allege a single incident or accusation of damage to any Loan Doctor consumer. In so doing, the CFPB relies upon *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 772–73 (S.D.N.Y. 2018), *amended by* 17-CV-890 (LAP), 2018 WL 11219167 (S.D.N.Y. Sept. 12, 2018), *vacated on other grounds and remanded by* — F. Appx. —, 2020 WL 6372988 (Mem.) (2d. Cir. Oct. 30, 2020) for the proposition that alleging "*likely"* without further allegations or proof of damages is sufficient to be awarded nonexistent damages. As to the "consumers acting reasonably" standard, the *CFPB*

failed to allege facts supporting that conclusion. Per *RD Legal*, in addition to alleging representations to consumers, the *CFPB* must allege that said representations would likely mislead consumers acting reasonably. *Id.* The Court went on to conclude, "that such representations 'without appropriate disclosures could deceive reasonable consumers.'" *Rd Legal* @ 775. The *Complaint* at issue does not allege this argument. The CFPB does not present any allegation to support its conclusion that it is "likely" that any reasonable Loan Doctor consumer was deceived.

28. CFPB in relying on a portion of *RD Legal* omitted actual disclosures that Loan Doctor provided to consumers on its website, that directly contradicted allegations and the theory of the CFPB's case.[6] Among other disclosures on the website, Loan Doctor required that each consumer, prior to investing in a CD, to acknowledge and agree to the contractual terms of the *HCF High Yield CD Account Agreement* (Exhibit B). The Agreement by and between Loan Doctor and each consumer disclosed how CD funds would be held or invested to realize profit, stating,

> "INSURANCE The funds on deposit in the account may be placed in global comingled accounts that are FDIC insured, SIPC insured, or otherwise insured at a regulated US based financial institution, including banks, brokerages, or investment funds. The insurance is issued, directly or indirectly, for the benefit of the CD account holders, and CD accounts holders are first position lienholders on proceeds from any insurance claim. Each individual account is not itself FDIC insured."

29. Second, the CFPB willfully concealed, and the *CFPB Complaint* ignores and misrepresents material omissions of pivotal information known to the CFPB which contradicts the basis for the imposition and degree of damages. This information includes the evidence that the SEC averred that the Defendants had refunded all moneys with interest, and that Defendants via counsel, Anthony Alexis, provided to the CFPB in the form of verifiable business records. The Defendants had re-paid all held CDs in full including all accumulated interest, then ceased business. (Exhibit

[6] The Loan Doctor website and content therein were known to CFPB and evident from quotes in the *CFPB Complaint* relied upon by the CFPB. See, *Roth* @ 509

A, *Declaration of Anthony Alexis*). To the contrary, the CFPB admitted having failed to contact any Loan Doctor CD consumer to verify payment or to assess any perception of deception or dissatisfaction or opinion of satisfaction. See, *FTC v. Kuykendall*, 371 F.3d 745, 766 (10th Cir. 2004) which held that, "Refunds to consumers and consumer satisfaction are to be considered as to whether damages, if any, exist.". The *Kuykendall* court stated, "the defendants might be able to show that some consumers received full refunds of their payments or that others were wholly satisfied with their purchases and thus suffered no damages**.**" *Id*. (emphasis added). Any disgorgement award may not exceed net profit. *Liu v. SE*C, 140 S.Ct.1936, 1946 (2020).

30. It is abhorrent and ethically questionable that the CFPB sought an award of restitution and disgorgement after refusing to verify voluntarily disclosed business records documenting that all consumer funds had been reimbursed with interest and therefore no possibility of any damages to be refunded nor net profit to disgorge.

31. Third, the CFPB concealed or ignored that the Consumer Complaints website database maintained by the CFPB (*Consumerfinance.gov/data-research/consumer-complaints/*) did not list any report of any consumer complaint against Loan Doctor or Dr. Radjabli. (Exhibit C, *Declaration of Michael Strage Regarding Search of CFPB Reported Complaints Databased.*)

32. Fourth, in responses to a FOIA request, the CFPB admitted that no consumer complaints had been received regarding Loan Doctor.

> "The Bureau responded to parts 4 and 5 of your Request collectively. **You argue that the Bureau should have responded to part 4, which seeks any complaints made regarding a company called Loan Doctor,** separately rather than combine it with part 5, which seeks a variety of other complaints and records. You assert that the Bureau's collective treatment of parts 4 and 5 resulted in a lack of clarity as to whether the Bureau is withholding any records responsive to part 4. **Finally, you assert that the Bureau should state whether it is withholding any records responsive to part 4 and, if so, provide an enumerated list of the records withheld**…The Bureau's response to your Request is unclear as to whether any records responsive to part 4 are being withheld. To the extent more clarity is

> required, it can be provided without remanding the Request for further processing as the information requested can be readily ascertained: **The Bureau's search yielded no records responsive to part 4 of your Request and thus no records responsive to part 4 have been withheld**. Exhibit D, Nov 24, 2020 [CFPB] *Final Appellate Determination Denying FOIA Appeal No. 2020-0271*).

33. Fifth, the CFPB did not fulfill the initial burden of alleging sufficient facts to "reasonably approximate" equitable monetary damages that would go back to consumers. ECF 1, ¶ 16 states, *"Starting in August 2019, Loan Doctor took more than $15 million from at least 400 consumers…"*. As discussed above, the number of consumers, amount received, and refunds were known to the CFPB and SEC from verifiable business records provided by the Defendants to the CFPB prior to filing, which the CFPB, an investigative agency, willfully chose not to verify.

34. Sixth, the CFPB accusation *took* is a conclusory claim lacking factual context and seeking to imply rather than factually allege wrongful acts. The CFPB does not name a single harmed or dissatisfied consumer of the "at least 400 consumers" alleged in the *Complaint*. (*CFPB Complaint*, ¶ 16). Equally, CFPB's *Demand and Relief* seeks, damages the CFPB knew did not exist, i.e. "pay redress to consumers" and "disgorgement of Defendants' ill-gotten gains." The CFPB concealed facts and implied that the alleged $15 million Defendants allegedly *took*: was in the possession of the Defendants; as it claimed falsely that redress was owed consumers; and funds had to be disgorged. Contrary to CFPB pleadings, the CFPB knew there were no Loan Doctor profits or other funds owed to consumers or held to disgorge. Also see, discussion of *Judicial Estoppel* ¶ 18, *supra*. CFPB cannot now deny that all CD consumer funds were refunded with interest. Notably, to this day the CFPB has refused to amend or correct these deficiencies.

35. The illusory "likely" damage allegations, such as they are, are demonstrably false. The knowingly false allegations and the CFPB's willful ignorance and subsequent wanton and repeated attempts to hopefully shield itself by ignoring exculpatory evidence of the Defendants' actions in

changing its website disclosures and fully reimbursing all of its consumers constitute a fatal flaw in the *CFPB Complaint* and a fraud on this Court. The CFPB misrepresented reality when it requested relief and damages that it knew to be unsubstantiated. Contrary to the prayer for relief in its pleading, the CFPB had proof when it filed the *Complaint* that there were no Loan Doctor consumer complaints, profits or consumer funds owed or to disgorge.

E. - FAILURE TO ADEQUATELY PLEAD ALLEGED DECEPTIVE ACTS AND PRACTICES

36. The CFPB alleged that it has statutory authority to regulate the Defendants' business activities because the Defendants were engaged in, "the offering and provision of consumer financial products or services." (ECF 1, ¶'s 5, 8). The *CFPB* alleged that, the *CFPA* defines "consumer financial product or service" to include "engaging in deposit-taking activities . . . or otherwise acting as a custodian of funds . . . for use by or on behalf of a consumer" for personal, family, or household purposes. 12 U.S.C. § 5481(5), (15)(A)(iv). (*CFPB Complaint*, ¶ 8).

37. The CFPB alleged "covered person", "related person" (*CFPB Complaint*, ¶'s 8, 9, 10) and *Violations of Law* (¶'s 49 – 77). The claims are interdependent on the conclusion that the Defendants were engaged in, "the offering and provision of consumer financial products or services." No well-pled allegations support that threshold. The cascade of potential liability fails.

38. "What constitutes an unfair or deceptive practice requires an individualized, 'fact-specific' inquiry." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013). The First Circuit affirmed an order granting a motion to dismiss because the Complaint's "failure to set forth any particular acts or practices marked by 'an extortionate quality ... of unfairness [and deceptiveness],'" was insufficient to state a claim. *Id.* See, *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989 (citing *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1291–92 (D. Minn. 1985) where the Court held that, "the FTC first must prove the corporate practices at issue

were misrepresentations or omissions generally relied upon by reasonably prudent persons and that consumer injury resulted."

39. As alleged in the *CFPB Complaint* and detailed *supra* in the section regarding the *Lack of Standing and thereby Jurisdiction*, the Defendants offered CD's to consumers. The consumers invested in Loan Doctor's disclosed venture (*CFPB Complaint*, ¶ 11, 12, 13, 14), which was memorialized by short-term, interest-bearing CD's. Via a legal conclusion interpreting the inclusion within an unrelated statutory definition, the CFPB sought to categorize a CD as a "deposit" without any alleged the basis for that categorization. (ECF 1 ¶ 14). Contrary to the CFPB's presumed and concluded that the alleged Defendant activities were "financial products or services". The CFPB must, but has failed to, state well-pled allegations that offering a CD is somehow within its statutory definitions and assumed authority. The CFPB concluded but did not allege or otherwise meet the threshold requirements of an applicable statutory definition or citation to case law wherein an investment for profit memorialized by a CD was taking a "deposit" or "acting as a custodian of funds" or in any manner involving consumer funds "for use by or on behalf of a consumer" for personal, family, or household purposes. As acknowledged, consumer funds were invested in Loan Doctor's disclosed venture for profit, not held as "deposits". Once invested the funds were that of Loan Doctor subject to re-payment under the CD terms. To establish authority under Securities Laws, the SEC averred, and the S. Carolina Court agreed that, "The HCF CD constitutes a "security" within the meaning of Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)]". (*SEC Complaint*, ¶ 68). Thus, authority laid within the SEC and not the CFPB.

E. The CFPB failed to allege the essential elements of unfair or deceptive acts or practices.

40. To bring an action based upon an unfair act or practice, the CFPB must at the onset, state well-pled allegations showing that "[1] the act or practice causes or is likely to cause substantial injury to consumers [2] which is not reasonably avoidable by consumers; and [3] such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1)). Further, there needs to be evidence as to what a reasonable consumer would likely conclude. *Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984).

41. The CFPB did not plead the required elements of 12 U.S.C § 5531(c)(1). [1] In the absence of damages, the *Complaint* pervasively and excessively relies upon "likely" for the first requirement with no allegations to substantiate the likelihood. [2] The *Complaint* did not allege that the Defendants' solicitation of investment funds memorialized by CD's could not be "reasonably avoidable by consumers." Investment was not a necessity or pressure sale. The readily avoided internet solicitation coupled the minimum of $1,000 would cause potential consumers to stop, consider and perhaps not buy in. [3] Absent were allegations that, "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." In fact, there were no injuries. Each and every consumer received the full *benefit of the bargain*. Lastly, there was no allegation at all as to what a reasonable consumer would likely conclude from the act or practice.

42. A prima facie case of deceptive acts or practices under the CFPA, requires well pled allegations of "(1) a representation, omission or practice that, (2) is likely to mislead consumers acting reasonably under the circumstances, and (3), [that] the representation, omission, or practice is material." *CFPB v. NDG Fin. Corp*., 15-cv-5211 (CM), 2016 WL 7188792, at *14 (S.D.N.Y. Dec. 2, 2016) (quoting *FTC v. Med. Billers Network, Inc*., 543 F. Supp. 2d 283, 303 (S.D.N.Y. 2008)) (alteration in original). The CFPB concluded and declared that consumers acting reasonably would "likely" be misled. Absent were allegations of consumer conduct or consequence. In regard

to allegations of materiality, The CFPB stated the elements, then applied circular logic rather than allegations of fact. "[A] practice is deceptive if (1) there is a representation or omission of information that is likely to mislead consumers acting reasonably under the circumstances and (2) that information is material to consumers."… "And, 'Defendants' misrepresentations were material because they were likely to affect the conduct or decisions of consumers regarding whether to deposit money into the HCF High Yield CD Accounts.'" (ECF 1, ¶ 50, 55).

43. As required by this Court's *Practice Rules,* the Defendants submitted a *Request for Pre-Motion Conference* November 12, 2020 ("*Defendants Letter*", ECF 8). The *Defendants' Letter*: listed fatal shortcomings and pleading lacunae of CFPB's *Complaint*: inadequately pled allegations; and most importantly, the CFPB's failure to disclose extensive, specific and verifiable business records in its possession that the Defendants provided to the CFPB prior to its filing the *Complaint.* The business records Loan Doctor voluntarily provided demonstrably and conclusively contradicted the vague and unsubstantiated pleas for damages.[7]

44. All consumers had been reimbursed in full, prior to the CFPB's filing its *Complaint*. (See, *Roth* @ 509, stating that the business records known to and relied upon by the CFPB may be considered in a motion to dismiss).

> "The Defendants can disclose omitted / withheld integral material and contradictory information known to the CFPB at the time of the filing Complaint. The CFPB did not disclose that in an effort to stop further accusations and unsupported claims by the CFPB and the SEC, Loan Doctor refunded every dollar with interest and ceased operations. **On July 2, 2020, Loan Doctor provided, via counsel Anthony Alexis, business records disclosing: each consumer; the amount received and subsequently refunded to each; bank records of refund wire transfers; and password access to the Loan Doctor's accounting records.** No consumer is named as a harmed party or included in damages claimed. It is unknown whether

[7] The *Defendants Letter* (ECF 8) also pointed out that the SEC was undergoing an investigation of Loan Doctor based upon the same alleged acts and circumstances in a legally and statutorily inconsistent and improper manner. The SEC deposed Dr. Radjabli <u>after</u> the CFPB had filed the *Complaint*, possibly requiring consolidation or coordination of that investigation with this action, for judicial efficiency, due process, and other reasons.

> the CFPB or SEC contacted any disclosed consumer whose rights the CFPB is purportedly protecting." ("*Defendants Letter*", EFC 8) (**emphasis** added).

45. The *CFPB Response* (ECF 9) listed its reply to issues raised in the *Defendants Letter*. The CFPB did not request or state an intent to amend its *Complaint*. The CFPB did not deny receiving Loan Doctor business records. The CFPB takes the position that it had no obligation to verify or substantiate the basis for unspecified damages claimed and made no effort to confirm that Loan Doctor paid each and every CD consumer in full. The CFPB did not disclose that in an effort to stop further accusations and unsupported claims by the CFPB and the SEC (See fn5 *Supra*). Loan Doctor refunded every dollar with interest and ceased operations. These startling and troubling admissions may be violative of ethical and professional obligations that are not relevant to the resolution of this motion. What is relevant and dispositive is that the CFPB knowingly filed its *Complaint* which alleged facts and requested relief based upon evidence that was known to be false. The CFPB's continued refusal to acknowledge those facts and amend its *Complaint* to reflect reality is unconscionable, forcing the Defendants to bring this motion is unreasonable and unconscionable, especially on the part of a party acting under the authority of the Executive Branch of the United Stated Government.

46. The CFPB also took the position that FRCivP 9(b) pleading standards did not apply. The CFPB simply stated that, in the event that FRCivP 9(b) pleadings standards did apply, the *Complaint* allegations fulfill the FRCivP 9(b) specificity requirements.

## IV – CONCLUSION AND RELIEF REQUESTED

47. *Res Judicata* – The *SEC Final Judgment* declared personal and subject matter jurisdiction precluding further consideration of the claims and issues litigated and that should have been litigated. A *Final Judgment* has been entered. This Court should deny redundant relitigation.

48. *Judicial Estoppel* – Non-existent damages - The CFPB's demand for restitution and disgorgement is contradicted by the averments the SEC that consumers were fully reimbursed. Additionally, the CFPB failed in its obligation to verify business records provided by the Defendants that consumers had been fully reimbursed. Further, the CFPB failed to allege damages to any consumer. The essential element of any claim "Damages" does not exist. The claim fails.

49. As an action in fraud regarding allegations of deceptive acts and practices related to offering a consumer financial product, CFPB did not plead elements with required specificity.

50. To allege maleficence or impose liability, the CFPB inadequately relied upon a statement of statutory elements without allegations of supporting facts.

51. The Defendants request that this Court first decide the dispositive question of the absence damages to any consumer and thereby there is nothing to disgorge or pay in restitution.

52. The *CFPB Complaint* predominantly consists of presumptions and conclusions where well-pled allegations of fact for consideration by this Court are required. Given two opportunities to amend, the *CFPB* has chosen to rely upon the *Complaint* (ECF 1) as filed and did not seek to amend and correct. Therefore, the *CFPB Complaint* should be dismissed with prejudice.

This 10th day of September 2021.

Submitted by:
/s/ Michael Strage
Michael Strage
Law Office of Michael Strage
425 Madison Ave, Suite 902
New York N.Y. 10017
(646)642-0701, michaelstrageesq@gmail.com
Attorney for Defendants