**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>Plaintiff,<br><br>v.<br><br>My Loan Doctor LLC d/b/a Loan Doctor and Edgar Radjabli,<br><br>Defendants. | **CASE NO. 1:20-CV-5159-ALC** |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

In their amended motion to dismiss, Defendants argue that the Complaint fails to sufficiently state claims for relief, that the Court lacks subject-matter jurisdiction, and that the Bureau's claims are now precluded by a July 9, 2021 settlement that Defendants entered into with the Securities and Exchange Commission (SEC). In addition, Defendants argue that the Bureau's attorneys have committed "fraud on this Court"[1] by failing to inform the Court of Defendants' claims that they have stopped their unlawful conduct and refunded money to consumers. None of Defendants' arguments justifies dismissal of the Complaint.

The Complaint asserts, with specificity, three claims that Defendants deceptively offered to consumers a deposit product—conduct that, if true, would violate the Consumer Financial Protection Act of 2010 (CFPA). The Court has subject-matter jurisdiction over these claims because they arise under federal law, and the CFPA itself

[1] Defs.' Mem. Supp. Second Am. Mot. Dismiss 20 at ¶ 35, ECF No. 29.

says that the Court "shall have jurisdiction" over an action brought under the CFPA. The Bureau had no obligation to include in its Complaint Defendants' claims (which the Bureau does not credit) that they stopped their unlawful conduct and refunded all consumers' wrongfully taken money. And in any event, as Defendants themselves concede, their assertions are irrelevant to whether the Complaint should survive the motion to dismiss.[2]

Finally, Defendants' settlement with the SEC, reached without litigation of any claim or issue, does not preclude any of the claims or issues raised in the Bureau's lawsuit, which was filed more than a year before the SEC settlement. In consenting to their settlement with the SEC, Defendants specifically agreed that the settlement would resolve only the claims asserted by the SEC in that proceeding. The SEC is not in privity with the Bureau and has no authority to bring the Bureau's claims on its behalf. And the issues in the settlement were never actually litigated.

For these reasons, explained in more detail below, the Court should deny the motion and allow this case to proceed on its merits.

## Factual Background

Radjabli concocted a scheme to offer consumers, through his company, Loan Doctor, a financial product that was in name one thing—a "certificate of deposit" with a 6% rate of return purportedly backed by both cash reserves and insurance and "comparable to a traditional bank savings account"[3]—but in practice another. In practice, Loan Doctor gambled with consumers' money in the stock market, investing

[2] *Id.* (admitting that Defendants' scurrilous claims "are not relevant to the resolution of this motion").
[3] Compl. ¶ 37, ECF No. 1.

most of the money that consumers deposited with Loan Doctor (around $15 million) either in Radjabli's own hedge fund, where it was used to directly purchase securities, or with a third-party broker-dealer, where it was further loaned to borrowers who put up their own stock portfolios as collateral.[4] All the while, Defendants represented to consumers that their deposits would either be (1) used to temporarily fund loans to doctors for career-related expenses, or (2) kept safe in FDIC-backed accounts or cash equivalents.[5] Defendants ran this scheme for nearly six months before Loan Doctor removed its purported certificate of deposit from its website in response to the Bureau's request.[6]

## Argument

### I. The Complaint adequately alleges that Defendants engaged in deceptive acts or practices.

As Defendants correctly state in their motion, the Court's role at this stage is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."[7] In doing so, the Court must "accept as true all factual allegations" in the Complaint "and draw from them all reasonable inferences."[8]

Defendants argue that they have already fully compensated consumers for the harm that they suffered as a result of Defendants' violations. But this assertion, which presents a question of fact outside the allegations in the Complaint, is not properly considered on a motion to dismiss under Rule 12(b)(6). And even if it were true that Defendants had stopped their unlawful conduct and returned to consumers all

[4] Compl. ¶ 33.
[5] Compl. ¶¶ 18–20, 32.
[6] Compl. ¶¶ 44–45.
[7] *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).
[8] *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

deposited money, the return of consumers' deposits does not negate the material misrepresentations made to consumers before the deposits were made. The Bureau would still be entitled to other relief, including damages that consumers may have suffered as a result of the loss of their funds, an injunction designed to prevent Defendants from violating the law again, and civil money penalties imposed against Defendants.[9]

Additionally, Defendants argue that the Bureau has failed to plead that Defendants' activities harmed consumers to begin with. The Bureau's Complaint alleges one type of claim—deception under the CFPA. Injury is not an element of such a claim. A prima facie deception claim under the CFPA requires only: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) is material.[10] A representation is likely to mislead consumers acting reasonably under the circumstances when that representation is false.[11] "Express representations that are shown to be false are presumed material."[12] A Rule 12(b)(6) motion is meant to test a claim's legal sufficiency, and the demand for relief required by Rule 8(a)(3) "is not itself a part of the plaintiff's claim."[13] Also, "it need not appear that the plaintiff can obtain the *specific* relief demanded as long as the court can ascertain

---

[9] *See* 12 U.S.C. § 5565(a)(2)(E), (G), (H).
[10] *CFPB et al. v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 772–73 (S.D.N.Y. 2018), *amended by* 17-CV-890 (LAP), 2018 WL 11219167 (S.D.N.Y. Sept. 12, 2018), *vacated on other grounds and remanded by* — F. Appx. —, 2020 WL 6372988 (Mem.) (2d. Cir. Oct. 20, 2020) (internal quotations omitted).
[11] *See id.* at 773.
[12] *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008); *see also RD Legal Funding*, 332 F. Supp. 3d at 773.
[13] *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *see also Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc.*, 806 F. Supp. 2d 503, 507–08 (D.P.R. 2011); 5 Wright & Miller, Federal Practice and Procedure: Civil § 1255 (4th ed.).

from the face of the complaint that *some* relief can be granted."[14] Courts therefore do not dismiss a complaint for failure to state a claim where the challenge relates to the relief sought.[15]

If the Bureau prevails on its claims against Defendants, it is entitled to relief, regardless of the degree to which consumers have been injured. Under the CFPA, "[i]f any person violates a Federal consumer financial law, the Bureau may . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law."[16] Consumer injury, or lack thereof, may be a mitigating factor in determining the size of the penalty under the CFPA,[17] but consumer harm is not necessary to state a claim here or for a penalty—even without it, a penalty is to be imposed for deceptive acts or practices.[18]

Defendants also argue that there are insufficient factual allegations to show that a consumer would "likely" be misled by Defendants' representations and that the deceptive representations were material. They further argue that the Bureau's pleadings on these elements rely on conclusory and circular reasoning. Contrary to Defendants' contentions, the Complaint lists Defendants' deceptive statements in great detail. It

---

[14] *Doe v. U.S. Dep't. of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985).
[15] *See id.*; *see also CFPB v. Citizens Bank, N.A.*, C.A. No. 20-044 WES, 2020 WL 7042251, at *16 (D.R.I. Dec. 1, 2020) ("Citizens states that the CFPB is 'well aware that they seek monetary remedies for customers who already received payments from the Bank. . . .' Again, this contention involves factual issues that must be resolved at summary judgment or trial. There is no cause to strike material from the Complaint at this time.").
[16] 12 U.S.C. § 5564(a).
[17] 12 U.S.C. § 5565(c)(3)(C) (providing that, in determining penalties, courts should consider "the severity of the risks to or the losses of the consumer").
[18] 12 U.S.C. § 5565(c)(2).

offers numerous specific false statements that Defendants made, including falsely representing that the money deposited in the consumers' CD accounts would be used to originate loans for healthcare professionals;[19] falsely representing that to the extent the deposited money was not being used to originate loans, it would be held in either an insured account or a "cash alternative" or "cash equivalent";[20] falsely touting the stability of money deposited in consumers' accounts by likening those accounts to traditional bank-savings accounts;[21] and falsely representing past returns on the CDs that Defendants offered.[22] These false representations, by their false nature alone, are likely to mislead a reasonable consumer, as express false statements are presumed to be material.[23] In addition, the Complaint here alleges that Defendants' deceptive representations were material and likely to affect consumers' decisions regarding whether to deposit money with Loan Doctor.[24]

Defendants point to a potential factual dispute in an effort to support their motion to dismiss, attaching as an exhibit an account agreement and arguing that it includes a disclosure that would correct any consumer misunderstandings such that the misrepresentations in the Complaint were not "likely to mislead" consumers.[25] Defendants cite no authority to support the Court's consideration of this or the other evidence that they seek to introduce outside the Complaint, and it should be excluded.

---

[19] Compl. ¶¶ 18.a., 19–30.
[20] Compl. ¶¶ 18.b., 31–36.
[21] Compl. ¶¶ 18.c., 37–41.
[22] Compl. ¶¶ 18.d., 42–43.
[23] *See RD Legal Funding, LLC*, 332 F. Supp. 3d at 772–73; *Med. Billers Network, Inc.*, 543 F. Supp. 2d at 304.
[24] Compl. ¶¶ 55, 62, 70, 76.
[25] Defs.' Mem. Supp. Second Am. Mot. to Dismiss 16–17 at ¶¶ 27–28, ECF No. 29; *id.*, Ex. B, Account Agreement, ECF No. 29-2.

Both new factual allegations and evidence to support them are "matters outside the pleadings" and are not appropriate for consideration in evaluating a Rule 12(b)(6) motion.[26] Only in specific, limited circumstances may documents outside the Complaint be considered—"'documents attached as an exhibit thereto or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken.'"[27] Importantly, "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion."[28] Here, the Complaint does not incorporate, refer to, or rely on any of the extraneous evidence that Defendants attach to their motion, and there is thus no basis for the Court to consider it.[29]

The Complaint alleges numerous false statements on Loan Doctor's website and in other marketing materials. Taken as true, as they must be at this stage, the Bureau's

---

[26] *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'").

[27] *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 374 (S.D.N.Y. 2013) (Carter, J.) (quoting *Thomas v. Westchester Cnty. Health Care Corp.,* 232 F. Supp. 2d 273, 275–76 (S.D.N.Y. 2002)).

[28] *Chambers*, 282 F.3d at 153; *see also Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (finding that the district court erred in considering documents where they "were not attached as exhibits to the amended complaint nor were they incorporated by reference," but were "merely discussed" in the complaint).

[29] *Tommy Lee Handbags Mfg.*, 971 F. Supp. 2d at 374 (quoting *Thomas v. Westchester Cnty. Health Care Corp.,* 232 F. Supp. 2d at 275–76) ("To incorporate a document by reference, 'the Complaint must make a clear, definite and substantial reference to the document[].'").

allegations "plausibly give rise to an entitlement to relief."[30] Rule 12(b)(6) is satisfied, as the Complaint adequately alleges deception claims.

## II. CFPA deception claims do not sound in fraud, and Rule 9(b)'s heightened pleading requirements do not apply.

Defendants argue that this case is an "action in fraud" such that Rule 9(b)'s heightened pleading requirement governs. It does not. This action consists solely of deception claims under the CFPA, and courts, including this one, have repeatedly held that Rule 9(b) does not apply to consumer-protection deception claims. As Judge Preska recently observed in another case involving the Bureau: "The Court has identified no case in which this Court or the Court of Appeals has applied Rule 9(b)'s heightened pleading standard to claims of deceptive or abusive acts or practices under the CFPA."[31]

Even if Rule 9(b) applied, the Complaint describes Defendants' activities in such detail that it would pass Rule 9(b) muster. Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."[32] The Complaint lists numerous word-for-word false statements that Defendants made regarding what they would do with consumers' money;[33] it identifies where the statements were made (on Loan Doctor's website, and in targeted advertisements, press releases, and emails to

---

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[31] *RD Legal Funding*, 332 F. Supp. 3d at 768; *see also FTC v. Freecom Comms., Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005) (explaining that a deception claim under the FTC Act is "simply not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)," and that "[u]nlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation").
[32] *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).
[33] Compl. ¶¶ 18–43.

registered investment advisors);[34] and it explains in detail what Defendants actually did with consumers' money that differed from what they represented to consumers.[35] The Complaint makes Defendants well aware of what they did and would satisfy Rule 9(b) if it applied to these ordinary deception claims (which it does not).

## III. The Court has subject-matter jurisdiction.

Under a heading of "STANDING/JURISDICTION—CFPB lacks standing and thereby personal or subject matter jurisdiction," Defendants seek dismissal under Rule 12(b)(1).[36] While Defendants' heading refers to standing and personal jurisdiction, their argument relates only to subject-matter jurisdiction. But there can be no question that the Court has subject-matter jurisdiction. The CFPA specifies that the court "shall have jurisdiction" in any action "brought under Federal consumer financial law."[37] This action is "brought under Federal consumer financial law" because it asserts violations of the CFPA, which is included within the statutory definition of "Federal consumer financial law."[38] And the CFPA also provides the Bureau's authority to bring the action.[39]

In their amended motion,[40] Defendants argue that, because they have challenged the sufficiency of the Bureau's allegations with respect to whether Defendants' activities

---

34 Compl. ¶¶ 15, 17, 20, 22–26, 31–32, 39, 42.
35 Compl. ¶¶ 18–43.
36 Defs.' Mem. Supp. Second Am. Mot. Dismiss 13-15, ECF No. 29.
37 12 U.S.C. § 5565(a)(1).
38 12 U.S.C. § 5481(14).
39 12 U.S.C. § 5564(a).
40 In their original motion to dismiss, Defendants made a different argument. They asserted that they are not "covered persons" under the CFPA because the product that they offered to consumers should be presumed to be a security, not a "consumer financial product of service" over which the Bureau would have authority. Defendants argued that claims involving their product would be properly brought under the

fall within the purview of the CFPA, the burden shifts to the Bureau to show that the CFPA applies.[41] Defendants cite no cases for this proposition.[42] But in any case, the Bureau alleges with specificity that Defendants' activities fall within the Court's subject-matter jurisdiction under the CFPA. The CFPA makes it unlawful for a "covered person" to engage in a deceptive act or practice.[43] And the statute defines "covered person" to include "any person that engages in *offering* . . . a consumer financial product or service."[44] Finally, the statute defines "consumer financial product or service" to include "deposit-taking activities . . . or otherwise acting as a custodian of funds . . . for use by or on behalf of a consumer" for personal, family, or household purposes.[45] As the Complaint alleges with specificity, Loan Doctor offers to accept deposits from consumers and to act as a custodian of those funds for use by consumers for personal, family, or household purposes.[46] Because Defendants offer to engage in deposit-taking

---

Securities Act of 1933 or the Securities Exchange Act of 1934, neither of which the Bureau has authority to enforce. *See* Defs.' Mem. Supp. Mot. Dismiss 6 at ¶¶ 13–15, ECF No. 12. But, to address this original argument, the Bureau need not allege violations of securities laws in order to reach Defendants' unlawful conduct. It need only allege precisely what it has alleged—facts about the Defendants' activities (that they offered to take deposits and act as a custodian of consumers' funds) that support the allegation that Defendants' *offered* a consumer financial product. This alone brings Defendants' activities within the purview of the CFPA.

[41] Defs.' Mem. Supp. Sec. Am. Mot. Dismiss 14 at ¶ 21, ECF No. 29.

[42] Defendants cite to *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004), but this case discusses plaintiff's burden for showing personal jurisdiction, not subject-matter jurisdiction. Moreover, *Miller* seems to only support the Bureau's position, explaining that "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* at 97.

[43] 12 U.S.C. § 5536(a)(1)(B).

[44] 12 U.S.C. § 5481(6) (emphasis added).

[45] 12 U.S.C. § 5481(5), (15)(A)(iv).

[46] Compl. ¶ 8.

activities, they fall within the CFPA's scope, the Bureau's authority, and this Court's jurisdiction.

Where, as here, a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) is based solely on the allegations in the Complaint, a plaintiff bears "no evidentiary burden."[47] The Court "must accept the complaint's allegations as true;" "'draw[ ] all reasonable inferences in favor of the plaintiff'"; and determine whether the Complaint alleges facts that establish subject-matter jurisdiction.[48]

The Bureau's allegations—that Loan Doctor accepted deposits from consumers and acted as a custodian of consumers' funds; that Loan Doctor represented to consumers that it offered a secure deposit product; and that Loan Doctor made material misrepresentations to consumers about its product—which must be presumed true for purposes of evaluating both a Rule 12(b)(1) and a Rule 12(b)(6) motion, establish the Court's subject-matter jurisdiction. Simply put, the Bureau has alleged claims under the CFPA, the Bureau has authority to bring those claims, and the Court has subject-matter jurisdiction over them.

Finally, Defendants attach to their amended motion a consent judgment entered in the District of South Carolina to effectuate a settlement between Defendants and the SEC.[49] They argue that because the consent judgment refers to Loan Doctor's CDs as securities, it therefore controls this Court's determination of whether the CDs offered by

---

[47] *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016)).

[48] *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

[49] *See* Defs.' Mem. Supp. Sec. Am. Mot. Dismiss, Ex. F, Final Judgment as to Defendants Edgar M. Radjabli, Apis Capital Management LLC, and My Loan Doctor (Final Judgment), ECF No. 29-5.

Loan Doctor are consumer financial products under the CFPA.[50] According to Defendants, this judgment deprives this Court of subject-matter jurisdiction. But this Court must evaluate subject-matter jurisdiction over the Bureau's action based on the allegations in the Bureau's Complaint, which asserts claims under the CFPA based on Defendants' offering of a consumer-financial product. Defendants also argue that under the legal doctrine of issue preclusion, the South Carolina judgment precludes the Bureau from asserting its position that the CDs are indeed consumer financial products, and in this way deprives this Court of subject-matter jurisdiction.[51] The Bureau disagrees with Defendants' assertions and addresses this argument below, in Section VI.

## IV. The Bureau has not knowingly made false allegations to or concealed exculpatory evidence from the Court.

Defendants accuse the Bureau of knowingly committing fraud on the Court by failing to disclose in the Complaint that Loan Doctor claims to have ceased operating and to have returned consumers' money. But the Bureau has no obligation to inform the Court of every unproven (and potentially false) assertion that Defendants made during the Bureau's investigation. And, contrary to Defendants' assertions, the Bureau specifically alleged in the Complaint that "Loan Doctor did not cease operating."[52] Indeed, the Complaint details Defendants' extensive efforts "to continue to sell Loan Doctor's High Yield CD product under a different name while still concealing its risks to consumers"—even after the Bureau had requested them to stop.[53] Defendants' allegations of unethical conduct are thus groundless.

[50] Defs.' Mem. Supp. Sec. Am. Mot. Dismiss 14-15 at ¶ 22, ECF No. 29.
[51] Defs.' Mem. Supp. Sec. Am. Mot. Dismiss 7 at ¶ 16, ECF No. 29.
[52] Compl. ¶ 45.
[53] Compl. ¶¶ 45–48.

## V. The Court should decline to consider matters outside the Complaint.

The Court should decline to consider two declarations submitted by Defendants' attorneys, Anthony M. Alexis and Michael Strage, in support of their motion.[54]

The declarations are extraneous to the Complaint and contain nothing that is relevant to the questions presented by the motion to dismiss: whether the Complaint adequately alleges claims within the Court's subject-matter jurisdiction.

In addition to being irrelevant and not properly before the Court on a motion to dismiss, Alexis's declaration also runs afoul of Rule 8.4 of the local ECF Rules & Instructions, which requires that a filed declaration include a scan of the declarant's actual signature. Alexis's declaration contains only an electronically created signature, not a scan of his actual signature.

## VI. The doctrines of res judicata, collateral estoppel, and judicial estoppel do not bar the Bureau's claims.

Defendants argue that their recent settlement with the SEC precludes the claims and issues in this lawsuit under the doctrines of res judicata (claim preclusion), collateral estoppel (issue preclusion), and judicial estoppel. For the reasons below, it does not.

### a. The SEC consent order does not preclude the Bureau's claims.

"[T]he preclusive effect of a settlement is measured by the intent of the parties to the settlement."[55] Here, the SEC and both Defendants made clear that they did not intend their consent order to preclude the Bureau's claims, which were already pending in this Court. Indeed, Defendants each stipulated that the consent order would

---

[54] *See* Alexis Decl., ECF No. 30; Strage Decl., ECF No. 31.
[55] *Greenberg v. Bd. of Governors of Fed. Rsrv. Sys.*, 968 F.2d 164, 168 (2d Cir. 1992).

"resolve[] only the claims asserted against Defendant in this [the South Carolina] civil proceeding."[56] The agreements also specifically contemplate litigation outside of the SEC's case, as they contain a clause giving Defendants a "right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party."[57] Finally, Defendants' agreements—and the stipulated judgment entered by the South Carolina federal court—specifically contemplated that this suit would survive the parties' settlement and might result in another judgment against Defendants, providing that Defendants' payment to the SEC "may be offset in an amount equal to payments made by Defendants to the [CFPB] . . . in connection with *CFPB v. My Loan Doctor LLC and Radjabli*, 20-cv-05159 (S.D.N.Y.)."[58] The South Carolina consent order thus memorializes Defendants' intent (and the SEC's and the South Carolina court's intent) that the Bureau's lawsuit against Defendants would survive the settlement of the SEC's case.

And even had Defendants not specifically agreed that the SEC settlement would have no effect on the Bureau's lawsuit, they nevertheless could not satisfy the claim-preclusion test. Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"[59] For claim preclusion to apply, Defendants "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the

[56] Consent of Defendant Edgar M. Radjabli 5 at ¶ 11, ECF No. 5-3, and Consent of Defendant My Loan Doctor LLC 4 at ¶ 11, ECF No. 5-4, *SEC v. Edgar M. Radjabli, Apis Cap. Mgmt., LLC, and My Loan Doctor, LLC*, Civ. Action No. 2:21-cv-01761-MBS (D.S.C. June 11, 2021) (attached here as Exhibits 1 & 2).
[57] *Id.* at 4, ¶ 11.
[58] *Id.* at 2, ¶ 2(c); Final Judgment 9, ECF No. 29-5.
[59] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."[60] Defendants cannot meet this test. Putting aside whether a consent order constitutes "an adjudication on the merits" that could have preclusive effect—even when the parties manifested their intent that the consent order would not—the Bureau was not a party to the SEC's action, and the Bureau is not "in privity" with the SEC. The privity requirement—that the party against whom res judicata is asserted is represented in both actions—is at its core meant to protect the due process rights of the bound party.[61] And because this requirement is not satisfied, there can be no claim preclusion here.

The Supreme Court has recognized that there can only be privity between two "officers of the same government" if "in the earlier litigation[,] the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy."[62] That was plainly not the case here, as the SEC had no authority to enforce the CFPA or to obtain the relief sought by the Bureau here—among other things, injunctive relief to ensure "that markets for consumer financial products and services are fair, transparent, and competitive."[63] In similar circumstances, where one agency in an earlier suit lacked authority to obtain relief sought by a different agency in a later

---

[60] *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).
[61] *Taylor*, 553 U.S. at 892-93 ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'") (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)).
[62] *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–403 (1940).
[63] 12 U.S.C. § 5511(a).

suit, federal courts have found a lack of privity between two federal agencies.[64] This lack of privity prevents the claim-preclusion doctrine's application here.

Defendants argue that "the CFPB is a named beneficiary under the terms of the SEC final judgment," and is therefore in "privity" with the SEC.[65] But contrary to Defendants' framing, the Bureau is not a beneficiary under the South Carolina judgment, and the SEC does not have the authority to represent the Bureau's interests. The South Carolina judgment at issue provides that if Defendants pay the Bureau up to $125,000 during the pendency of Loan Doctor's payment plan with the SEC, the payments to the SEC will be offset by that amount.[66] But the SEC has no authority to bring claims on the Bureau's behalf or to assess or impose penalties or other relief on behalf of the Bureau, and the order resolving the SEC's action against Defendants does not require any payment by Defendants to the Bureau. That the South Carolina judgment provides for the possibility of a judgment against Defendants and in favor of

[64] *See United States v. Alky Enters, Inc.*, 969 F.2d 1309, 1314–15 (1st Cir. 1992) (holding that the ICC's injunction against defendants did not preclude the Attorney General from later seeking civil penalties against defendants for the exact same violations because the agencies were not "in privity," since the ICC "did not have statutory authority to represent the United States' interest in collecting civil penalties," and recognizing that the ICC still had a right as an independent agency to obtain injunctive relief without waiting for the Attorney General to join its case); *FTC v. Wilcox*, 926 F. Supp. 1091, 1101 (S.D. Fla. 1995) ("Here different agencies with different functions, interests, and authority sought different relief over different periods of time. Under these circumstances, the FTC should not be considered to be in privity with the United States or the Postal Service."); *U.S. v. Modlano*, 954 F. Supp. 2d 384 (D. Md. 2013) ("While sub-divisions within the same federal department *may* be in privity with one another, that is not automatically the case; the key is whether 'in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy.'" (quoting *Sunshine Anthracite Coal Co.*, 310 U.S. at 402–03)).

[65] Defs.' Mem. Supp. Sec. Am. Mot. Dismiss 6 at ¶ 13, 2 at ¶ 3, ECF No. 29 (emphasis omitted).

[66] *See* Final Judgment 9, ECF No. 29-5.

the Bureau in this action, and allows that Loan Doctor and Radjabli may offset their payments to the SEC up to a certain amount, does not make the Bureau a "beneficiary" of the South Carolina judgment, and it does not mean that the Bureau is in privity with the SEC.

None of the cases that Defendants cite in support of their position that the SEC and the Bureau are in privity with one another are analogous to the facts here. Not one of the cited cases involves two independent federal government agencies, or even two government agencies at all. Rather, the cases that Defendants invoke involve either plaintiffs represented by a common association bringing identical claims,[67] or a single individual plaintiff who was a real-party-in-interest in the first suit (as the suit was brought on his sole behalf) and who represented himself in a second suit,[68] or they are tax cases involving a single governmental taxing authority.[69]

Here, the Bureau and SEC are not attempting to bring identical claims—the Bureau has alleged violations of the CFPA, whereas the SEC alleged violations of

[67] *See Monahan*, 214 F.3d 275 (finding privity between unionized New York City police officers bringing identical constitutional challenges to a sick leave policy, and concluding that a settlement by the labor union on behalf of one police officer plaintiff, which included a new general sick leave policy applicable to all officers, barred a subsequent officer's suit on identical claims); *Alpert's Newspaper Delivery Inc. v. The New York Times Co.*, 876 F.2d 266 (finding privity between plaintiff newspaper companies bringing identical antitrust claims where the first lawsuit was largely litigated by an industry association of which all plaintiff newspapers were a represented member).

[68] *See Cromwell v. Sac County*, 94 U.S. 351 (1876).

[69] *See Tait v. Western Maryland Ry. Co.*, 289 U.S. 620 (1933) (finding a federal entity and its tax collector to be in privity such that a judgment involving one affected a judgment involving the other); *Gunter v. Atlantic Coast Line R.R. Co.*, 200 U.S. 273 (1906) (finding a state entity and its tax collector to be in privity such that a judgment involving one affected a judgment involving the other).

securities laws. And the Bureau and SEC are independent entities with independent litigating authority,[70] not controlled by a common authority or representative.

**b. The SEC settlement does not preclude litigation of issues raised by the Bureau's lawsuit.**

The Defendants also argue that the Court lacks "subject-matter jurisdiction" over the Bureau's claims because, in Defendants' view, the SEC settlement definitively means that the financial products at issue are securities and not consumer-financial products.[71] The doctrine of issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."[72] Issue preclusion cannot apply here because no issue of fact or law was "actually litigated" in the SEC's action against Defendants.[73] And the issue or finding that Defendants point to—the conclusion that the CDs in question are definitively *not* consumer financial products—is nowhere in the consent order, much less actually litigated.[74] The stipulated judgment

---

[70] *See* 12 U.S.C. § 5564(a) ("If any person violates a Federal consumer financial law, the Bureau may . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law."); *Id.* at § 5564(b) ("The Bureau may act in its own name and through its own attorneys in enforcing any provision of this title, rules thereunder, or any other law or regulation, or in any action, suit, or proceeding to which the Bureau is a party."); *S.E.C. v. Blinder, Robinson & Co., Inc.*, 855 F.2d 677 (10th Cir. 1988) (finding the SEC's independent civil enforcement authority—which derives from multiple statutory provisions–to be constitutionally valid).
[71] Defs.' Mem. Supp. Sec. Am. Mot. Dismiss 7 at ¶ 16, ECF No. 29.
[72] *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748–49 (2001)).
[73] *See* 2 Restatement § 27, Comment e ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of [issue preclusion] does not apply with respect to any issue in a subsequent action.").
[74] *See* Final Judgment, ECF No. 29-5. While the consent order refers to the CDs as securities, it nowhere states that none of the financial products or deposits at issue were not consumer financial products.

makes no findings of fact or conclusions of law, and it specifically states that the SEC and Defendants "consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); [and] waived findings of fact and conclusions of law."[75] With no issues of fact or law determined, Defendants cannot show that an issue of fact or law was essential to the stipulated judgment, and issue preclusion cannot apply.

**c. The doctrine of judicial estoppel does not bar the Bureau's lawsuit.**

Finally, Defendants argue that the Bureau should also be barred by judicial estoppel from seeking restitution or disgorgement from Defendants because, they claim, the SEC found that Defendants had returned the money that they took from investors, or, in Defendants' exact words, the SEC "acknowledged full reimbursement."[76] As an initial point, Defendants point to an allegation in the complaint filed by the SEC, but nowhere in the South Carolina judgment is there a finding that Defendants returned investors' money.[77] But even if there were, judicial estoppel would not bar the Bureau's request for consumer redress and other relief.

As the Supreme Court has explained, and the Second Circuit has noted, while there is no "general formulation of principle" directing when judicial estoppel is appropriately invoked, several factors generally inform its application: (1) that "a party's later position must be clearly inconsistent with its earlier position," and (2) that "the party has succeeded in persuading a court to accept that party's earlier position, so that

---

[75] *Id.* at 1.
[76] Defs.' Mem. Supp. Second Am. Mot. Dismiss 12-13 at ¶¶ 17-19, ECF No. 29.
[77] *See* Final Judgment, ECF No. 29-5.

judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."[78]

In arguing that *the Bureau* should be bound by a position *the SEC* has taken, Defendants overlook the common factor among those cases where judicial estoppel is applied: that the party now being bound to a prior position or statement is *the same party* who took the prior position or made the prior statement in question. The only case that Defendants reference in support of their theory of judicial estoppel, *Adelphia Recovery Trust v. Goldman, Sachs & Company*, involved two plaintiffs, a trust company and its "predecessor-in-interest," that were considered to be effectively the same party. In *Adelphia Recovery Trust*, the court ultimately concluded that a trust company formed during the bankruptcy of a cable company as the cable company's successor-in-interest could not affirmatively take a position in later litigation that was inconsistent with the cable company's prior position in the bankruptcy.[79] In *Adelphia*, unlike in this case, the two plaintiffs were not distinct entities—because the defunct cable company was the "predecessor-in-interest" of the trust company, they were one in the same.

Here, the Bureau is not the same party as the SEC—neither agency is the other's predecessor or successor-in-interest, and neither has authority to represent the other's

[78] *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001); *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (quoting the Supreme Court's explanation of judicial estoppel in *New Hampshire v. Maine*); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 485–86 (2d Cir. 2014) (quoting *Pegram v. Herdrich,* 530 U.S. 211, 227 n.8 (2000) ("'Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'")).

[79] 748 F.3d at 115–116.

interest in their respective actions.[80] The SEC does not have the authority to enforce consumer protection statutes, and the Bureau does not have the authority to enforce investor protection statutes.

Defendants also overlook that there is no risk of inconsistency in the Bureau's action and the Defendants' settlement with the SEC. As explained by the Second Circuit, "[i]n deciding whether to invoke judicial estoppel, [the court] look[s] principally to see whether 'a party's later position . . . [is] clearly inconsistent with its earlier position,' and whether the court in the first proceeding adopted the party's position."[81] "'[R]elief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain.'"[82] Defendants argue that the Bureau should be estopped from seeking certain relief in this action based on a single allegation made by the SEC in a separate complaint, which was resolved by settlement. Not only do Defendants point to an allegation made by a different party from the Bureau, the SEC did not present any evidence in its action, and the SEC did not "persuade" the court to accept its allegations of fact—the consent judgment explicitly made no findings or adoption of facts. Given this, there is no risk of an inconsistent result here, and there is no basis for Defendants' estoppel argument.

---

[80] *See, e.g.*, *Alky Enters, Inc.*, 969 F.2d at 1314–15 (finding for claim preclusion purposes that an independent federal agency and the Attorney General were not in privity with one another because one did not have the statutory authority to represent the interest of the other in collecting civil penalties); *Wilcox*, 926 F. Supp. at 1101 (finding for claim preclusion purposes that the FTC was not in privity with the United States or Postal Service because they had different functions and interests); *Modlano*, 954 F. Supp. 2d 384 (finding for claim preclusion purposes that sub-divisions within the same federal department are not automatically in privity with one another).
[81] *Crawford*, 758 F.3d at 485–86 (quoting *New Hampshire*, 532 U.S. at 750–51).
[82] *Id.* (quoting *Adelphia Recovery Trust*, 748 F.3d at 116).

## Conclusion

The Bureau has adequately alleged claims for deceptive acts or practices under the CFPA, this Court has subject-matter jurisdiction over the alleged claims, and the consent judgment between Defendants and an entirely different plaintiff on different claims, which makes no findings of fact or conclusions of law, has no preclusive effect on the Bureau's claims. Defendants' motion to dismiss should be denied.

Respectfully submitted,

CARA PETERSEN
Acting Enforcement Director
JEFFREY PAUL EHRLICH
Deputy Enforcement Director
KARA K. MILLER
Assistant Litigation Deputy

s/ Benjamin Konop
BENJAMIN KONOP (OH No. 0073458)
Senior Litigation Counsel
Telephone: 202-435-7265
e-mail: Benjamin.Konop@cfpb.gov
STEPHANIE DUFF-O'BRYAN
(NY No. 5026224; TX No. 24087448)
Enforcement Attorney
Telephone: 202-288-7033
e-mail: Stephanie.Duff-OBryan@cfpb.gov

Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552