**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BUREAU OF CONSUMER FINANCIAL PROTECTION,
*Plaintiff,*

Civil Action No. 20-CV-05159 ALC – BCM

v.

MY LOAN DOCTOR LLC d/b/a LOAN DOCTOR and DR. EDGAR RADJABLI
*Defendants.*

**DEFENDANTS' REPLY TO OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1. The *Second Amended Motion to Dismiss Plaintiff's Complaint* ("*Memo ISO*") and the [CFPB] *Opposition to Defendants' Motion to Dismiss* ("*CFPB Response*"," Response") brief each side's view of the Defendants' bases for dismissal of this case. This *Reply* addresses assertions in the *CFPB Response* which do not comport with the facts or the law.

2. The CFPB chose to forego two opportunities to amend its *Complaint* and relies upon the *Complaint* as filed. The *CFPB Response*[1] as to the adequacy of its *Complaint* states,

> "The Complaint asserts, with specificity, three claims that Defendants deceptively offered to consumers a deposit product—conduct that, if true, would violate the Consumer Financial Protection Act of 2010 (CFPA). The Court has subject-matter jurisdiction over these claims because they arise under federal law, and the CFPA itself says that the Court "shall have jurisdiction" over an action brought under the CFPA. the Bureau had no obligation to include in its Complaint Defendants' claims (which the Bureau does not credit) that they stopped their unlawful conduct and refunded all consumers' wrongfully taken money. In any event, as Defendants themselves concede, their assertions are irrelevant to whether the Complaint should survive the motion to dismiss" (*CFPB Response*, pp.1, 2, referring in fn2 to Defendants' *Memo ISO*, ¶ 35).

The Defendants made no concession that any of its factual assertions were irrelevant to dismissal.[2]

[1] The *CFPB Response* lacks paragraph numbers. References to the *Response* lists the page number.

[2] *Memo ISO*, ¶ 35 contains no such language or reference. *Memo ISO*, ¶ 45 from which the CFPB provides a misleading incomplete reference regarding the CFPB's lack of regard for ethical standards states, "The *CFPB Response* (ECF 9) listed its reply to issues raised in the *Defendants Letter*. The CFPB did not request or state an intent to amend its *Complaint*. The CFPB did not deny receiving Loan Doctor business records. The CFPB takes the position that it had no obligation to verify or substantiate the basis for relief sought and made no effort to confirm that Loan Doctor paid

3. The Defendants' *Memo ISO* challenged the CFPB's assertion of statutory authority under the CFPA. The *CFPB Response* avoids examination of the dispositive issue of jurisdiction. Without support, the CFPB asserts its conclusion that CFPB statutory authority is unquestionable since the matter was brought within the CFPA. The CFPB declared that it had "no evidentiary burden" beyond the conclusions in the *Complaint* to establish subject matter jurisdiction. (*CFPB Response*, p. 10). Also, relying on an excerpt from *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020), the CFPB sought to avoid the lack of subject matter analysis by categorizing the Defendants' Rule 12(b)(1) fact-based motion as a facial attack, and exclude contrary evidence.

4. A federal court has subject matter jurisdiction over a cause of action only when it "has authority to adjudicate the cause." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184, 1188 (2007). When jurisdiction is challenged, the plaintiff "bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003), (See also, *Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 639 (2d Cir. 2005); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020)). The district court may examine evidence outside of the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). The inference standard

---

each and every CD consumer in full. The CFPB did not disclose that in an effort to stop further accusations and unsupported claims by the CFPB and the SEC. Loan Doctor refunded every dollar with interest and ceased operations. Nor does the CFPB deny that it has both an internal policy and specific memo directing consideration of a target's conduct and whether restitution was made before bringing a case, both of which it violated in this case. (See ECF 14.4). These startling and troubling admissions may be violative of ethical and professional obligations that are not relevant to the resolution of this motion. What is relevant and dispositive is that the CFPB knowingly filed its *Complaint* which alleged facts and requested relief based upon evidence that was known to be false. The CFPB's continued refusal to acknowledge those facts and amend its *Complaint* to reflect reality is unconscionable, forcing the Defendants to bring this motion is unreasonable and unconscionable, especially on the part of a party acting under the authority of the Executive Branch of the United Stated Government."

of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 570 (2007) does not apply to jurisdiction. "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU* @ 623, quoting, *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

5. Contrary to CFPB's limited *Nicholas* reference, a less selective reading of *Nicholas* at 586, 587 reveals the *Nicholas* Court's opinion regarding the inclusion of evidence beyond the *Complaint,* and the plaintiff's burden of proof in response to a fact-based Rule 12(b)(1) motion. "A defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Carter v. Healthport Techs. LLC*, 822 F.3d 47, 57 (2d Cir.2016); also see, *MMA Consultants 1, Inc. v. Rep. of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject matter jurisdiction"). "In opposition to such a motion, [a plaintiff] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir.2017). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter* @ 57.

7. The basis of all claims in this case is the offering and issuance of Certificates of Deposit (CDs). Jurisdiction is dependent upon the categorization of the subject CDs. If a CD is a *Security*, the controversy must and was brought based upon *Securities Laws* / SEC. If a CD is not a *Security*, the controversy may be brought under the *CFPA* / CFPB, not *Securities Laws*.

8. The SEC alleged personal jurisdiction and subject matter jurisdiction in the U.S.D.C. of S.

Carolina based upon *Securities Law*.

> The SEC *Complaint – Jurisdiction and Venue*, SEC alleged, "6. The Commission brings this action pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1], and Sections 209(d) and 209(e) [15 U.S.C. §§ 80b-9(d) and 80b-9(e)] of the Advisers Act to enjoin such acts, practices, and courses of business; and to obtain disgorgement, prejudgment interest, civil money penalties, and such other relief as the Court may deem just and appropriate. 7. This Court has jurisdiction over this action pursuant to Section 20 and 22 of the Securities Act [15 U.S.C. §§ 77t & 77v], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-l, and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14]."

The Court's acknowledgment, acceptance, and *Final Judgment* in that lawsuit brought by the SEC, by application, declared jurisdiction based upon the SEC's assertion in its *Complaint* that the subject CDs are *Securities*.[3]

9. The CFPB now limits itself to, "one type of claim-deception under the CFPA" (*Response*, p.4). The "deception" claim is an integral, material, related claim to the principal claim, offering and issuance of CDs. Pursuant to the preclusive effect of the *Doctrine of Res Judicata*, in its litigation the SEC was required to bring or forego all claims on behalf of consumers against the Defendants based upon the facts and circumstances related to the offering and issuance of the CDs. Lacking is CFPB statutory or case law authority wherein, the SEC was not required to raise the claim of "deception".[4] Neither CFPB argument addressed the basic requirement that all claims regarding the same facts and circumstances against the same defendants on behalf of the same consumers must have been brought or would be later barred.

10. Additionally, limiting its claims to "deception" does not address the threshold issue of the

---

[3] (*SEC Final Judgment* ¶1) - "The Securities and Exchange Commission having filed a Complaint and Defendants Radjabli, Apis Capital Management LLC ("Apis Capital"), and My Loan Doctor LLC ("Loan Doctor") (collectively "Defendants") having entered general appearances; consented to the Court's jurisdiction over Defendants and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:"

[4] The SEC has authority pursuant to Section 17(a)(2) of the Securities Act of 1933 to pursue claims regarding false or misleading statements in the offering and sale of Securities. See also, 15 U.S.C. § 77q(a)(2).

lack of factual allegations of consumer damages, no injured party. Despite no injury, the CFPB *Complaint - Demand for Relief* seeks "redress to consumers" and "disgorgement of ill-gotten gains". In the CFPB's analysis of its sole claim -deception-, the CFPB avers that damage to consumers is irrelevant. Courts disagree. Any monetary relief stemming from a violation of a consumer financial law must be causally linked to *consumer injury*. *See, e.g.*, *FTC v. Publishers Bus. Servs., Inc.*, 540 F. App'x 555, 558 (9th Cir. 2013).[5] Considering the CFPB's assuming instead of providing supporting allegations of fact leading to the conclusion of "likely"[6], "trivial or speculative harms," let alone, as here, no allegations of harm whatsoever, do not suffice.[7]

11. To defend its position that consumer harm is irrelevant to it cause, the CFPB cites *CFPB v. Citizens Bank, N.A., C.A.*, No. 20-044 WES, 2020 WL 7042251, at *16. (*CFPB Response,* p. 5 fn15). But, in *Citizens Bank*, the issue was the degree of damages, not, as here, the lack of any allegation of damage or injury at all. The Court denied a Motion to Dismiss based upon a factual dispute over the degree of alleged damages, that it held was not a cause to dismiss pursuant to Rule 12(b). Inherent in the decision, was the recognition that the existence of damages is a *material fact* that must be pled.

---

[5] The pleading failure of the lack of allegations of injury is sufficient in and of itself to deny jurisdiction. See, *Nicholas v. Trump*, 433 F.Supp. 3d 581, 586 (S.D.N.Y.) quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). The Court stated, "[T]he 'Case' and 'Controversy' requirement places the burden on 'those who invoke the 'power of a federal court to demonstrate standing — a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'". In order to satisfy the first prong of standing — that the plaintiff has suffered an "injury in fact" — the plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[6] As stated in the *Memo MTD* ¶ 23, "the *Complaint* relied repeatedly upon CFPB's the conjectural term "*likely*". (ECF 1 - ¶'s 50, 54, 55, 61, 62, 69, 70, 75, 76). The reference to "likely" as the sole support for a cause of action does not supersede the essential basic breach, causation and damages pleading requirements or absolve the CFPB from having to plead facts from which it seeks to buttress the "likely" evidentiary conclusion beyond speculation. Under the *Twomby- Iqbal* standards a pleading cannot be structured purely out of conjecture and conclusions presented as facts. The *Complaint* fails by omission the test because it does not present any factual basis for who, what, how, why, or by its own standard "if" anyone was "likely," deceived or harmed.

[7] "*The act or practice must cause or be likely to cause substantial injury to consumers.* Substantial injury usually involves monetary harm, … Trivial or merely speculative harms are typically insufficient for a finding of substantial injury." *FDIC Consumer Compliance Examination Manual — December 2018,* VII 1.2. Here, the CFPB concedes that with the absence of allegations of injury there is no injury at all.

12. Regarding the issues of *Res Judicata* and *Judicial Estoppel* pertaining to the *Final Judgment*, the *CFPB Response* states,

> "Finally, Defendants' settlement with the SEC, reached without litigation of any claim or issue, does not preclude any of the claims or issues raised in the Bureau's lawsuit, which was filed more than a year before the SEC settlement. <u>In consenting to their settlement with the SEC, Defendants specifically agreed that the settlement would resolve only the claims asserted by the SEC in that proceeding.</u> <u>The SEC is not in privity with the Bureau and has no authority to bring the Bureau's claims on its behalf.</u> And the issues in the settlement were never actually litigated." (CFPB Response (*Response*, p. 2, <u>emphasis</u> added).

13. The CFPB correctly declared that the government's claims (and any potential non-alleged claims) on behalf of consumers against the Defendants based upon the facts and circumstances of the offering and issuance of CDs have been resolved. If not brought, claims and issues are barred due to the SEC's choice not to bring forth and adjudicate them. Nonetheless, the CFPB persists in the assertion that the claims and issues and potential claims and issues must be relitigated.

14. Reviewing the language of the *Consents* (CFPB Exhibits ECF 32-1 and 32-2), the *SEC Final Judgment* does not impede "legal or factual positions" taken in the *Defendants' Memo ISO*. Paragraph 12 of each of the *Consents* states, "<u>Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission [SEC] is not a party</u>." (<u>emphasis</u> added). To invoke the passage and block the Defendants from "tak[ing] [anti-CFPB] legal or factual positions" in the SDNY, CFPB now *de facto* concedes privity with the SEC.

15. The evident assertion of SEC – CFPB privity in the SEC action to assert an affirmative defense, belies the CFPB's contrary opposition to the imposition of *Res Judicata* and *Judicial Estoppel* based upon lack of privity. The CFPB does not have the privilege of simultaneous relying on and denying privity. The CFPB asserts that the two governmental agencies were not bound, and the SEC did not represent its interests. Courts have stated that the "'formalities of legal

relationships provide clues but not solutions.' Instead, a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.'" *Monahan* @ 285, quoting *Alpert's Newspaper Daily, Inc. v. The New York Times*, 876 F2.d 266, 270 (2d Cir.1989). Further, the party against whom preclusion is sought had a full and fair opportunity to litigate the issue in the prior litigation. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992, *cert. denied*, 508 U.S. 952 (1993).

16. Allowing the SEC to plead and settle its case on behalf of the same 400 purchasers of Defendants' CD's,[8] the CFPB did not intervene in S. Carolina. The CFPB now seeks to pursue relitigating the same facts and circumstances on behalf of the same consumers, in the same transactions, against the Defendants. The CFPB's "no privity" assertion disregards the agencies' role as agents for the real parties at interest -the consumers, their cooperative policies and practices, their coordinated efforts here, and facts of this case. Examples include joint efforts in this litigation through extensive interagency cooperation. (1) The SEC was aware of the proceedings in the SDNY and deposed Defendant Edgar Radjabli while this case was underway. Day five of five days of questioning exclusively concerned this case. (ECF 8, *Request for Premotion Conference*, p.3). (2) Promoting synergy, the SEC and CFPB routinely participate in joint efforts wherein they combine their statutory authority. Such as: *The Task Force on Market Integrity and Customer Fraud* initiated July 11, 2018 and the CFPB and SEC are among the members of the *Financial Institutions Examination Council* [9], having the authority and obligation to share information

[8] www.consumerfinance.gov/enforcement/, The first words appearing on the website are, "A central part of our mission is to stand up for consumers."

[9] Federal Financial Institutions Examination Council (FFIEC) includes, the CFPB, the Securities and Exchange Commission (SEC), the Federal Reserve Board (FRB), the Federal Deposit Insurance Corporation (FDIC), the National Credit Union Association (NCUA), and the Office of the Comptroller of the Currency (OCC), Federal Trade Commission (FTC), and the Commodity Futures Trading Commission (CFTC).

garnered in their investigative efforts. [10] (*See* 12 U.S.C. § 3412(e)). (3) The interest of the CFPB and consumers were represented by the SEC as evident in the virtually identical SEC and CFPB *Complaint* allegations.

17. *CFPB Response* does not address the issue of inadequately pled allegations of engagement in "deceptive acts and practices", the Relying upon *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir 1985) and *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013), the CFPB quotes incomplete statements of law regarding the Court's required consideration of allegations. The Supreme Court's divergent view stated in *Rothstein* and the often referenced *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) is and has been that the initial presumptions afforded the CFPB *Complaint* are not blindly absolute and limitless. The 2d Circuit in *Rothstein* affirmed dismissal of the plaintiffs' claims for failure to state a claim on which relief could be granted. As stated, the Court was not bound by legal conclusions masquerading as factual allegations. *Rothstein* @ 94; *Iqbal* @ 678 citing *Twombly* @ 555. "In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard,'" guided by "two working principles." *Iqbal*, @ 678. First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Id*. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Instead, a plaintiff must allege facts that "nudge[] their claims across the line from conceivable to plausible . . .". *Twombly*, @ 570. Determining whether the complaint states a plausible claim for relief is "a context-specific task that requires the

[10] www.consumerfinance.gov/enforcement/enforcement/life-cycle-of-enforcement-action, "when a depository institution, company, individual, or other entity subject to our enforcement authority breaks the law, we may take enforcement action against them. In many cases, we will partner with other federal regulators or state agencies to investigate the wrongdoing and coordinate enforcement."

reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, @ 679).

18. Per *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 775 (S.D.N.Y. 2018), *amended by* 17-CV-890 (LAP), 2018 WL 11219167 (S.D.N.Y. Sept. 12, 2018), *vacated on other grounds and remanded by* — F. Appx. —, 2020 WL 6372988 (Mem.) (2d. Cir. Oct. 30, 2020), in addition to alleging representations to consumers, the *CFPB* must (and failed to) allege facts supporting the claim that the representations would likely mislead consumers *acting reasonably*. The Court concluded, "that such representations 'without appropriate disclosures could deceive reasonable consumers.'" *Id.*

19. The *Response* avoids the issue. Instead, the CFPB seeks to exclude Exhibit B to *Memo ISO*, the Loan Doctor *Account Agreement* (ECF 29-2) as a documentation outside the Complaint not subject to an exception. The CFPB seeks to avoid the *Account Agreement* for good reason. It is an example of "appropriate disclosures" referred to by the *RD Legal* Court. The *Account Agreement* was among the documents accessed by consumers on the Loan Doctor website. The CFPB chose which portions of the Loan Doctor website to support its cause, quoted extensively, and referred to the website in paragraphs 17, 20, 22, 24, 25, 26, 31, 33, 34, 44, and 45 of the *Complaint*. The Loan Doctor website and documents therein were "integral" to CFPB claims and its *Complaint* made clear and substantial reference to the Loan Doctor website which included all documents, including Exhibit B to *Memo ISO*.

20. The CFPB did not allege that any consumer had been deceived or mislead by statements on the Loan Doctor website or acts of Loan Doctor. With Loan Doctor business records in hand, the CFPB tacitly admits its inability to allege a single incident of damage to any Loan Doctor consumer. The CFPB relies upon *RD Legal* for the proposition that alleging "*likely*" without further allegations or proof of damages is sufficient to be awarded nonexistent damages. As to the

"consumers acting reasonably" standard, the *CFPB* failed to allege facts supporting that conclusion. Per *RD Legal*, in addition to alleging representations to consumers, the *CFPB* must allege that said representations would likely mislead consumers acting reasonably. *Id.* The Court went on to conclude, "that such representations 'without appropriate disclosures could deceive reasonable consumers.'" *Rd Legal* @ 775. The *Complaint* at issue does not allege this argument. The CFPB does not present any allegation to support its conclusion that it is "likely" that any reasonable Loan Doctor consumer was deceived.

## CONCLUSION

21. The CFPB's action should be dismissed with prejudice. From the onset and still, the *Complaint* lacks: well pled allegations of jurisdiction; sufficiently articulated allegations of supporting facts; or any true or good faith claim of actual damages. The failures of the CFPB *Complaint* were compounded by the resolution of the SEC's U.S.D.C. of S. Carolina enforcement action, which precludes further litigation. In S. Carolina, a fellow District Court adjudicated the same specific transactions involving the same exact customers and same exact funds. In doing so, the SEC and the Court acknowledged the Defendants had refunded Consumers to the penny before the SDNY case was filed. The rogue nature of the CFPB's perniciously persistent pursuit of this victimless case contravenes the terms of the *SEC Final Judgment*, its own practices and procedures requiring consideration of Defendants' manifest responsible business conduct, and the Doctrine of *Res Judicata*, and requires an immediate and final termination of this matter.

This 29th of October 2021.

Submitted via ECF by,

/s/ Michael Strage
Michael Strage
425 Madison Ave, Suite 902
NYC, NY 10017, (646) 642-0701
michaelstrageesq@gmail.com
Attorney for Defendants